1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10                    ----oo0oo----

11  KRISTY SCHWARM, on behalf of
    herself and others similarly      NO. CIV. S-05-1304 WBS GGH
12  situated,

13          Plaintiff,                ORDER RE: MOTION FOR CLASS
                                      CERTIFICATION
14      v.

15  HENRY CRAIGHEAD, an
    individual, DISTRICT ATTORNEY
16  TECHNICAL SERVICES, LTD., a
    Nevada corporation, d/b/a
17  COMPUTER SUPPORT SERVICES,
    a/k/a CHECK
18  RESTITUTION/PROSECUTION
    PROGRAM, JOHN Q. LAWSON, an
19  individual, MARY A. CHASE, an
    individual, DOES 1 through 20,
20
            Defendants.
21
                      ----oo0oo----
22
            Named plaintiff Kristy Schwarm has filed a class action
23
    against defendants Henry Craighead and his company, District
24
    Attorney Technical Services, Ltd. ("DATS"), d/b/a Computer
25
    Support Services; John Lawson; Marcy Chase; and Does 1 through 20
26
    ("defendants").  This action arises from plaintiff's allegation
27
    that defendants are debt collectors who, under color of law, are
28

                                 1

1 making unlawful threats, demanding unlawful fees, and

2 disregarding the requirements of the California Penal Code §§

3 1001.60-1001.67, which authorizes the district attorney to

4 contract with a private entity for "check restitution/prosecution

5 programs."  Plaintiff now moves for class certification pursuant

6 to Federal Rule of Civil Procedure 23.[1]

7 I.   Factual and Procedural Background

8        On June 28, 2005, plaintiff filed her complaint in this

9 action, containing causes of action for: (1) violation of her

10 right to due process under 42 U.S.C. § 1983, (2) violation of her

11 right to due process under the California Constitution, (3)

12 violation of the FDCPA, (4) fraudulent misrepresentation, and (5)

13 negligent misrepresentation.

14        Defendant DATS operates over two dozen "check

15 restitution/prosecution" programs throughout various California

16 counties. (Compl. ¶ 12.)  These are privately-run bad check

17 diversion programs which function by contract with local

18 government entities under the statutory guidance of California's

19 Bad Check Diversion Act ("BCDA"), Cal. Penal Code §§ 1001.60-

20 1001.67.  (Compl. ¶ 20.)  In exchange for a small fee, DATS will

21 process the county's bad check cases in an effort to recover the

22 unpaid funds from the dishonored checks.  (Compl. ¶ 20.)

23        Merchants within participating counties send dishonored

24

25        [1]   On February 6, 2006, plaintiff filed a motion to strike
or seal her bank statements, which were filed as Exhibit A to
26 defendants' opposition to this motion.  Because that motion was
not properly noticed, the court will not consider it at this
27 time. See Local Rule 78-230 ("[m]otions defectively noticed shall
be filed, but not set for hearing," and "the moving party shall
28 file and serve a new notice of motion setting forth a proper time
and date.").

2

1   checks directly to DATS.  (Pl.'s Mot. for Class Certification 4.)

2   Once the dishonored check is received by DATS, a letter under the

3   letterhead of the respective law enforcement agency is mailed to

4   the bad check writer.  (Compl. ¶ 20.)  These letters advise the

5   check writer of a pending investigation, reference California

6   Penal Code § 476(a), and request payment for the amount of the

7   bad check, bank fees, bad check fees, and diversion fees.  (Id. ¶

8   21.)  In addition, these letters advise the check writer of a

9   mandatory financial management class.  (Pl.'s Mot. for Class

10  Certification 5.)  If the fees are paid within a prescribed

11  period of time, the diversion fee is waived, and attendance at

12  the mandatory financial management class is no longer required.

13  (Id.)  If the fees are not paid, more letters will follow

14  informing the check writer of the possibility of prosecution and

15  criminal sanctions.  (Id. at 5-6.)  Ultimately, upon the check

16  writer's continued refusal to pay, DATS may order a copy of the

17  check writer's bank records, pursuant to Government Code §

18  7480(b). (Id. at 6.)

19          On March 9, 2004, in Ukiah, California, plaintiff wrote

20  checks to Food Mart and Walmart in the amount of $83.41 and

21  $69.26, respectively.  (Pl.'s Mot. for Class Certification 8.)

22  The local merchants subsequently dishonored both checks, and the

23  checks were forwarded to DATS for processing.  (Id.)  DATS mailed

24  an initial letter for the dishonored Food Mart check on June 30,

25  2004.  (Id.)  The letter was typed on letterhead for the

26  Mendocino District Attorney and advised plaintiff of the ongoing

27  investigation regarding her alleged violation of Penal Code §

28  476(a).  (Compl. Ex. 1.)  The letter demanded total fees of

3

Case 2:05-cv-01304-WBS-CKD   Document 42   Filed 03/07/06   Page 4 of 21

$208.41,[2] and further stated that "[n]o response to this notice will be considered a rejection of this diversion opportunity and may result in further investigation with the possible issuance of a criminal complaint and ARREST warrant." (Id.)  As plaintiff remained non-responsive, defendants continued to send periodic letters until plaintiff declared bankruptcy. (Pl.'s Mot. for Class Certification.)  On June 23, 2005, after receiving a filing in the bankruptcy proceeding, DATS requested plaintiff's bank records using the letterhead of the Ukiah Chief of Police.  (Id.)

Plaintiff moves to certify the following "umbrella" class: "All persons who wrote checks in California to whom DATS mailed collection demands concerning dishonored checks, since June 29, 2003, to the date the class is certified." (Id. at 9.) In addition, plaintiff proposes three subclasses.  Subclass 1, or "the FDCPA class," is defined as "[a]ll members of the umbrella class from whom DATS attempted to collect, or collected[,] money for checks written for personal, family, or household purposes, since June 29, 2004." (Id.)  Subclass 2, or the "Due Process and tort class," is defined as "[a]ll members of the umbrella class from whom DATS attempted to collect, or collected[,] money, since June 29, 2003." (Id.)  Subclass 3, or the "Bank records class," is defined as "[a]ll members of the umbrella class whose bank records DATS attempted to obtain."[3]  (Id.)

Defendants oppose class certification on the grounds

---

[2]     This amount represents $83.41 for the dishonored check, a $5.00 bank fee, a $35.00 "bad check fee," and a $85.00 "Diversion fee." (Compl. Ex. 1.)

[3]     Plaintiff's description of subclass 3 does not specify a common legal claim shared by its members.

4

that the action lacks commonality, typicality, and adequate

representation.  Defendants also contend there is no applicable

Rule 23(b) class by which this action can be certified.  Finally,

defendants move to dismiss plaintiff's supplemental state law

claims because they raise novel and complex state law issues.

II.  Discussion

A.    Supplemental Jurisdiction

Under 28. U.S.C. § 1367(c)(1), a district court has

discretion to decline to exercise supplemental jurisdiction over

a claim "that raises a novel or complex issue of state law."

After determining whether state claims properly fall under §

1367(c)(1), the "Court must decide that declining jurisdiction

best serves the values of economy, convenience, fairness, and

comity'" established in United Mine Workers v. Gibbs, 383 U.S.

715 (1966).  See Jeffery v. Home Depot U.S.A., Inc., 90 F. Supp.

2d 1066, 1071 (S.D. Cal. 2000).[4]

---

[4]    In Executive Software N. Am. v. United States Dist.
Court, 24 F.3d 1545, 1548-49 (9th Cir. 1994), the Ninth Circuit
admonished the parties that "this Court does not interpret the
1990 enactment of Section 1367 as restricting the discretionary
factors set forth in Gibbs.  Rather, this Court interprets
Section 1367 as merely allowing this Court, at its discretion, to
exercise jurisdiction over supplemental parties, which was
previously foreclosed by Finley v. United States, 490 U.S. 545
(1989)."  The court went on to explain:

By codifying preexisting applications of Gibbs in
subsections (c)(1)-(3), however, it is clear
that Congress intended the exercise of discretion
to be triggered by the court's identification of
a factual predicate that corresponds to one of
the section 1367(c) categories.  Once that
factual predicate is identified, the exercise of
discretion, of course, still is informed by whether
remanding the pendent state claims comports with the
underlying objective of 'most sensibly accommodating'
the values of 'economy, convenience, fairness, and

First, the "factual predicate" for declining jurisdiction under § 1367(c)(1) does not clearly exist because although Counts 4 and 5 may involve novel issues of California law, raising an issue of first impression regarding the interpretation of California Penal Code §§ 1001.60-1001.67,[5] it is not clear that these issues are complex.  Courts have considered claims to be complex when they address issues of first impression that are numerous or of constitutional magnitude. See, e.g., Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1037-38 (8th Cir. 1999) (affirming a district court's decision to decline to exercise jurisdiction under § 1367(c)(1) when the claims involved at least six "complex substantive and remedial issues of first impression"); Castellano v. Bd. of Trustees of Police Officers' Variable Supplements, 937 F.2d 752, 758-59 (2d

comity.'

24 F.3d at 1557 (citations omitted).

The Ninth Circuit later reiterated this view in Acri v. Varian Assocs., 114 F.3d 999, 1000 (9th Cir. 1997) (en banc) ("[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c) - as it has always had under United Mine Workers v. Gibbs, 383 U.S. 715 (1966).").  The court in Acri explained that, "[w]hile discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the Gibbs values 'of economy, convenience, fairness, and comity.'"  114 F.3d at 1001 (citing Allen v. City of L.A., 92 F.3d 842, 846 (9th Cir. 1996), Executive Software N. Am. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)).

[5]     Specifically, defendants contend the BCDA must be interpreted to determine whether it "contemplates an allowance for a contractor to charge a fee for a diversion class, and the allowable amount of that fee or any other administrative fees." (Defs.' Opp'n to Pl.'s Mot. for Class Certification 15). Although defendants provide five additional examples of statutory ambiguity with regard to the BCDA, those alleged ambiguous sections are not implicated by Counts 4 and 5.

1  Cir. 1991) (declining supplemental jurisdiction and concluding
2  that "it would be, at the very least, imprudent for us to
3  determine a state constitutional claim of first impression").
4  In contrast, the court here faces a single, unexceptional
5  question of statutory interpretation: whether DATS had statutory
6  authorization under California law to seek fees from putative
7  plaintiffs beyond the actual amount of bank charges incurred.

8       Second, the values of economy, convenience, and
9  fairness favor retention of supplemental jurisdiction over Counts
10  4 and 5 by this court.  The state and federal claims share the
11  operative facts regarding the substance of the communications
12  between the defendant and the plaintiff, the nature of the
13  contract between the defendant and Mendocino County, and the
14  request for plaintiff's bank records by the defendant.  Because
15  economy and convenience are best served in the maintenance of a
16  single suit, see Rosado v. Wyman, 397 U.S. 397, 405 (1970), the
17  common nucleus of operative facts between the state claims and
18  the federal claims arising out of § 1983 and the FDCPA favors the
19  retention of jurisdiction.

20       Defendant seeks dismissal of Counts 4 and 5 on the
21  basis of comity.  (Defs.' Opp'n to Pl.'s Mot. for Class
22  Certification 12-17.)  "Needless decisions of state law should be
23  avoided both as a matter of comity and to promote justice between
24  the parties by procuring for them a surer-footed reading of the
25  applicable law."  Gibbs, 383 U.S. at 726.  The decisions of state
26  law this court must make are not needless, but rather are
27  necessary to determine the merits of the federal claims.  For
28  example, plaintiff's FDCPA claim will be dependent upon this

1  court's interpretation of relevant sections of the BDCA.  <u>See</u>

2  <u>Newman v. Checkrite Cal., Inc.</u>, 912 F.Supp. 1354, 1368 (E.D. Cal.

3  1995) (finding that for a defendant to show collection based

4  charges were "permitted" by law, "it must identify some state

5  statute which 'permits,' i.e., authorizes or allows, in however

6  general a fashion, the fees or charges in question").  Therefore,

7  comity arguably counsels in favor of the court retaining

8  supplemental jurisdiction as well, and supplemental jurisdiction

9  will be retained by this court.[6]

10         B.   <u>Class Certification</u>

11         A class action must meet the four prerequisites under

12 Federal Rule of Civil Procedure 23(a), in addition to meeting the

13 requirements of at least one of the three subdivisions of Federal

14 Rule of Civil Procedure 23(b).  <u>See</u> Fed. R. Civ. P. 23(a),(b).

15 Each subclass must also satisfy these same requirements.  <u>Betts</u>

16 <u>v. Reliance Collection Agency</u>, 659 F.2d 1000, 1005 (9th Cir.

17 1981).  Additionally, although a district court has discretion in

18 determining whether the moving party has satisfied each Rule 23

19 requirement, <u>see</u> <u>Califano v. Yamasaki</u>, 442 U.S. 682, 701 (1979);

20

21         [6]   Defendants also seek dismissal of Counts 4 and 5 based
   on plaintiff's failure to plead reliance, an element of those
22 claims. (Defs.' Opp'n to Pl.'s Mot. for Class Certification at
   10.); see also Fed. R. Civ. Proc. Rule 12(b)(6).  Defendants
23 conceded in oral argument that this argument was, essentially, a
   12(b)(6) motion to dismiss for failure to state a claim raised
24 for the first time in their opposition to the instant motion.

25         This argument does not implicate lack of subject matter
26 jurisdiction.  Defendants have not filed a motion to dismiss, and
   plaintiff's only opportunity to respond comes in the form of a
27 reply to their class certification motion.  Because defendants'
   attempt to make a 12(b)(6) motion to dismiss is untimely and not
28 properly noticed, the court declines to address it.

1  Montgomery v. Rumsfelo, 572 F.2d 250,255 (9th Cir. 1978), the

2  court must conduct a rigorous inquiry before certifying a class,

3  see Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982); E. Tex.

4  Motor Freight Sys. v. Rodriquez, 431 U.S. 395, 403-05 (1977).

5  Petitioners have the burden of demonstrating that they satisfy

6  the class certification prerequisites.   Hanon v. Dataproducts

7  Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citing Mantolete v.

8  Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985)).

9      1. Rule 23(a)

10      Rule 23(a) restricts class actions to cases where:

11      (1) the class is so numerous that joinder of all
        members is impracticable, (2) there are questions

12      of law or fact common to the class, (3) the claims
        or defenses of the representative parties are

13      typical of the claims or defenses of the class, and
        (4) the representative parties will fairly and

14      adequately protect the interests of the class.

15  Fed. R. Civ. P. 23(a).   These requirements are more commonly

16  referred to as numerosity, commonality, typicality, and adequacy

17  of representation.   See Fed. R. Civ. P. 23(a); Hanlon v. Chrysler

18  Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

19      a. Numerosity

20      Rule 23(a)(1) requires a class "so numerous that

21  joinder of all members is impracticable" before the action is

22  certified.   E. Tex. Motor Freight, 431 U.S. at 405 (1977)

23  ("careful attention to the requirements [for class certification]

24  remains nonetheless indispensable").   Courts have established no

25  absolute limitations for determining numerosity.   See Gen. Tel.

26  Co. v. E.E.O.C., 446 U.S. 318, 330 (1980).   However, a class

27  consisting of one thousand members "clearly satisfies the

28  numerosity requirement."   Sullivan v. Chase Inv. Servs., Inc., 79

9

1  F.R.D. 246, 257 (N.D. Cal. 1978).

2      Here, plaintiff has met the numerosity requirement for
3  each subclass.  As to Subclasses 1 and 2, plaintiff provides
4  statistical reports from each county using defendants' services,
5  and these reports reference thousands of potential plaintiffs.
6  (Pl.'s Mot. for Class Certification Ex. 11.)  As to Subclass 3,
7  the statistical reports also reference thousands of instances of
8  bank record collection by defendants.  (Id.)  Moreover,
9  defendants do not object to class certification on numerosity
10 grounds.

11      b. Commonality

12      Rule 23(a)(2) also requires "questions of law or fact
13 common to the class."  Fed. R. Civ. Proc. 23(a)(2).  The Ninth
14 Circuit construes commonality liberally.  See Hanlon, 150 F.3d at
15 1019.  It is not necessary that all questions of law and fact be
16 common.  Id.  "The existence of shared legal issues with
17 divergent factual predicates is sufficient, as is a common core
18 of salient facts coupled with disparate legal remedies within the
19 class."  Id.

20      Here, there are common questions of both law and fact.
21 Because defendants have engaged in standardized practices of
22 sending form letters to putative class members regarding
23 dishonored checks, there is a common factual basis for all class
24 members.[7]  Additionally, plaintiff's legal claims arise from this

25

26     [7]   Defendant disputes commonality on the allegation that
27 "different letters were sent in different counties and the oral
   communications between [defendant] and check writers are not
   uniform."  This argument, however, is nothing more than an
28 allegation of "divergent factual predicates," which does not

10

1  common set of facts.[8]   Plaintiff claims that defendants

2  negligently and fraudulently misrepresented information in their

3  communications regarding: (1) the fact that the communications

4  were not from a law enforcement agency; (2) the character,

5  amount, and legal status of the debt; and (3) the fact that

6  defendants could not themselves prosecute putative plaintiffs for

7  failure to respond.  (Pl.'s Mot. for Class Certification 13-14.)

8  Other legal questions common to the putative plaintiffs are: that

9  defendants' collection practices violate plaintiffs' rights to

10 substantive and procedural due process; that defendants failed to

11 await a finding of probable cause that the putative class members

12 had violated the BCDA before sending letters and attempting to

13 collect upon the debt; and that defendants invaded plaintiffs'

14 privacy by requesting bank records.

15        Moreover, undergirding the several claims alleged by

16 plaintiff is a common defense being asserted by defendants.

17 Defendants contend that the specific amount and type of authority

18 they exercised were granted to them by California's BDCA.  More

19 specifically, defendants contend that under the BDCA, they had

20 the authority to send demand letters, charge fees for debt

21

22

23

24 defeat commonality.  See Hanlon, 150 F.3d at 1019.

25        [8]   The proposed umbrella class is defined by the factual
   commonality of its members: all putative members are people who
26 received collection demands regarding dishonored checks from
   DATS.  The other classes are based on plaintiffs' other legal
27 claims; namely, plaintiff's claims relating to the FDCPA, due
   process under § 1983 and the California Constitution, and
28 negligent and fraudulent representation and invasion of privacy
   under California law.

11

1  collection, and request bank records.[9]  Accordingly, plaintiff

2  has met the commonality requirement.

3          c. <u>Typicality</u>

4          Rule 23(a)(3) further requires that the "claims or

5  defenses of the representative parties [be] typical of the claims

6  or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality

7  requires that named plaintiffs have claims "reasonably

8  coextensive with those of absent class members," without the

9  claims having to be "substantially identical."  <u>Hanlon</u>, 150 F.3d

10  at 1020.  The test for typicality "is whether other members have

11  the same or similar injury, whether the action is based on

12  conduct which is not unique to the named plaintiffs, and whether

13  other class members have been injured by the same course of

14  conduct."  <u>Hanon</u>, 976 F.2d at 508 (quoting <u>Schwartz v. Harp</u>, 108

15  F.R.D. 279, 282 (C.D. Cal. 1985)).

16          In this case, all putative class members have the same

17  or similar injury arising out of the same or similar fees

18  charged, alleged due process violations, and, with respect to

19  Subclass 3, the same or similar bank record inquiries.

20  Defendants engaged in a common course of conduct that was not

21  unique to plaintiff by sending collection demand letters to all

22  class members, by presenting those demand letters under the

23  "color of law," by demanding fees based on alleged statutory

24  authorization, by allegedly making fraudulent and negligent

25  misrepresentations in their communications with putative

26

27          [9]   There is agreement among the parties as to these common
   issues of law. (<u>See</u> Defs.' Opp'n to Pl.'s Mot. for Class
28  Certification 15 n.12; Pl.'s Mot. for Class Certification 13-14.)

plaintiffs, and, as to Subclass 3, and by requesting bank records based on alleged statutory authorization.  (See Pl.'s Mot. for Class Certification App. 3, Craighead Dep. at 40: 1-8, 20-25; 93:16-17.)  Finally, it is through this same course of conduct that the alleged injuries arose.  Plaintiff's claims are reasonably coextensive with those of the class, and thus meet the typicality requirement.[10]

>     d. Adequacy of Representation

Rule 23(a)(4) requires representative parties who "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4); see Hanlon, 150 F.3d at 1020.  To resolve the question of legal adequacy, the court must answer two questions: (1) do the named plaintiff and her counsel have any conflicts of interest with other class members and (2) will the named plaintiff and her counsel vigorously prosecute the action

---

[10]  Defendants contend that plaintiff lacks typicality because (1) defendants sent different types of letters to check writers in different counties and (2) due to internal processing errors, defendants' conduct was unique with respect to the plaintiff.  (Defs.' Opp'n to Pl.'s Mot. for Class Certification 20-21.)  As with commonality, however, precise symmetry is not required between all the letters sent by defendants to absent class members and those letters sent by defendants to the named plaintiff.  Instead, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not the specific facts from which it arose or the relief sought."  Abels v. JBC Legal Group, P.C., 227 F.R.D. 541, 545 (N.D. Cal. 2005) (quoting Hanon, 976 F.2d at 508).  Additionally, the internal processing errors committed by defendants do not appear to have altered the shared course of conduct among the putative class members and the named plaintiff.  Plaintiff contends that the letters were essentially the same, based on the deposition testimony of defendant Craighead and defendants' responses to interrogatories.  (Pl.'s Reply in Supp. of Mot. for Class Certification 9-10.)  Finally, with respect to defendants' requests for bank records, plaintiff points out that although there may be differences in the timing of acquisition of bank records, the timing of acquisition is irrelevant to plaintiff's claims.  (Id.)

1    on behalf of the class?  <u>Hanlon</u>, 150 F.3d at 1020.

2          Defendants contend that named plaintiff's current

3    financial history makes her an unsuitable fiduciary who is

4    financially unable to vigorously prosecute this action.[11]  All

5    class members must, by definition, have written a bad check.

6    Thus, defendants' argument would force this court to find every

7    putative member of the class an unsuitable fiduciary, and would

8    prevent any case with financially vulnerable plaintiffs from

9    being treated as a class action, a result this court cannot

10   allow.

11         Defendants have pointed to no real conflicts of

12   interest between named plaintiff, her counsel, and the unnamed

13   class members.  Additionally, the court finds no indication that

14   the named plaintiff and her counsel will not vigorously prosecute

15   this action.  Significantly, two of the four attorneys

16   representing plaintiff have appeared before this court in a

17   previous FDCPA class action.  <u>See</u> <u>Littledove v. JBC & Assoc.,</u>

18   <u>Inc.</u>, No. 00-0586, 2001 WL 42199 (E.D. Cal Jan. 11, 2001).

19   Therefore, named plaintiff and her counsel will adequately

20   represent the putative class.

21              2. <u>Rule 23(b)</u>

22

23         [11]  The defendant cites to a District of Minnesota case to
     support its assertion.  <u>See</u> <u>Sonmore v. CheckRite Recovery Servs.</u>,
24   206 F.R.D. 257, 263 (D. Minn. 2001).  However, that case does not
     mandate a showing of financial suitability as an element of
25   adequate representation.  <u>See</u> <u>id.</u> at 263 n.4 (finding the same
     argument to be groundless and without merit as plaintiff's
26   counsel had stipulated to advancing the costs of litigation).
     This court has found no authority that would require it to impose
27   this additional element.  Moreover, plaintiff has stated in her
     declaration that she has arranged for her attorneys to advance
28   all litigation costs.  (Schwarm Decl. ¶ 7.)

1    An action that meets all the prerequisites of Rule

2 23(a) may be maintained as a class action if it also meets the

3 requirements of at least one of the three subdivisions of Rule

4 23(b).  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163

5 (1974).  Plaintiff seeks certification under Rule 23(b)(2).  In

6 the alternative, plaintiff seeks certification of a "hybrid

7 class" with "injunctive, declaratory relief, and damages issues

8 in the Section 1983 class being certified under Rule 23(b)(2),

9 and monetary damage issues in the FDCPA class being certified

10 pursuant to Rule 23(b)(3)." (Pl.'s Mot. for Class Certification

11 20.)

12            i. Rule 23(b)(2) certification

13    Rule 23(b)(2) provides for class certification when

14 "the party opposing the class has acted or refused to act on

15 grounds generally applicable to the class, thereby making

16 appropriate final injunctive relief or corresponding declaratory

17 relief with respect to the class as a whole."  Fed. R. Civ. P.

18 23(b)(2).  "Class actions certified under Rule 23(b)(2) are not

19 limited to actions requesting only injunctive relief or

20 declaratory relief, but may include cases that also seek monetary

21 damages."  See, e.g., Probe v. State Teachers' Retirement Sys.,

22 780 F.2d 776, 780 n.3 (9th Cir. 1986) (noting that the

23 plaintiff's request for money damages was "merely incidental to

24 their primary claim for injunctive relief"); Ballard, 186 F.R.D.

25 589, 596 (E.D. Cal. 1999) (certifying a class under Rule 23(b)(2)

26 on "issues of liability, declaratory relief and statutory damages

27 under the FDCPA"); Littledove, 2001 WL 42199 at *5 (certifying a

28 class under Rule 23(b)(2) when "the claims for injunctive relief

15

will affect more members and have consequences over a greater period of time than the claims for monetary damages"). However, injunctive and declaratory relief must <u>predominate</u> over monetary relief for certification to be appropriate under Rule 23(b)(2). See <u>Molski v. Gleich</u>, 318 F.3d 937, 949-50 (9th Cir. 2003) (certifying a class under Rule 23(b)(2) when injunctive relief was the predominant form of relief sought by the class).

Plaintiff argues that monetary damages are incidental to the declaratory and injunctive relief sought and therefore do not predominate.  There is no bright-line rule that incidental damages do not predominate; the proper inquiry requires examining the specific facts and circumstances of the case to determine what form of relief predominates.  See <u>Molski</u>, 318 F.3d at 950.

Here, injunctive relief and corresponding declaratory relief is appropriate with respect to the class as a whole because defendants' actions are generally applicable to the entire class--each putative member was subject to defendants' collection efforts that were purportedly made pursuant to statutory authorization under the BCPA.[12]  Although plaintiff additionally seeks actual damages and statutory damages pursuant to 15 U.S.C. § 1692(k), the request for injunctive and declaratory relief clearly predominates over the claim damages. (<u>Id.</u> ¶ 11.)  Under the hybrid class proposed by plaintiff, the monetary relief sought by Rule 23(b)(2) is restricted to

---

[12]   See Fed. R. Civ. P. Rule 23(b)(2) advisory committee note (1996) ("Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.").

16

1  statutory damages.  Statutory damages under the FDCPA are limited
2  in class actions to one percent of the defendants' net worth and
3  divided between all class members.  15 U.S.C. § 1692k.

4          Accordingly, class certification under Rule 23(b)(2) is
5  proper.

6                  ii. <u>Rule 23(b)(3) certification</u>

7          A class action may also be maintained under Rule
8  23(b)(3) if "the court finds that the questions of law or fact
9  common to the members of the class predominate over any questions
10  affecting individuals members, and that a class action is
11  superior to other available methods for the fair and efficient
12  adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).
13  There is clear justification for handling the dispute on a
14  representative rather than individual basis, "[w]hen common
15  questions present a significant aspect of the case and they can
16  be resolved for all members in a single adjudication . . . ."
17  <u>Hanlon</u>, 150 F.3d at 1022 (quoting Charles A. Wright et al.,
18  <u>Federal Practice & Procedure</u> § 1777 (2d ed. 1986)).

19          Here, the common questions present a significant aspect
20  of the case, and they can be resolved for all members in a single
21  adjudication.  The only significant individual questions will
22  relate to the identification of the individual class member,
23  whether the individual class member paid "collection fees," and
24  whether the individual paid those fees in reliance on defendants'
25  alleged misrepresentation.  Thus, the common questions concerning
26  whether the defendants' standardized conduct violates the FDCPA
27  and whether the defendants' conduct amounts to actionable
28  misrepresentations predominate the action.  See <u>Amchem Prods.</u>,

1    Inc., v. Windsor, 521 U.S. 591, 625 (1997) ("[P]redominance is a

2    test readily met in certain cases alleging consumer . . . fraud .

3    . . ."); see also, Fed. R. Civ. P. Rule 23(b)(3) advisory notes

4    (1966) ("[A] fraud perpetrated on numerous persons by the use of

5    similar misrepresentations may be an appealing situation for a

6    class action, and it may remain so despite the need, if liability

7    is found, for separate determination of damages suffered by the

8    individuals in the class.").

9         A class action is also superior to the litigation of

10   the putative members' individual claims.  Not only are most

11   individual consumers unaware of their rights under the FDCPA, but

12   also the size of the individual claims is "usually so small there

13   is little incentive to sue individually."  Ballard, 186 F.R.D. at

14   600 (concluding, in an analysis under 23(b)(3), that "[c]lass

15   action certifications to enforce compliance with consumer

16   protection laws are 'desirable and should be encouraged'")

17   (quoting Duran v. Credit Bureau of Yuma, Inc., 93 F.R.D. 607, 610

18   (D. Ariz 1982) (citation omitted)); see also Amchem Prods., Inc.,

19   521 U.S. at 617 (noting that Rule 23(b)(3) was designed to allow

20   the vindication of "the rights of groups of people who

21   individually would be without effect strength to bring their

22   opponents into court") (quoting Benjamin Kaplan, A Prefatory

23   Note, 10 B.C. Ind. & Com. L. Rev. 497 (1969)).

24        Accordingly, class certification under Rule 23(b)(3)

25   for putative members having claims for actual damages is also

26

27

28

18

1  proper.[13]

2            3. <u>Class Definition</u>

3            The court has discretion to create subclasses when

4  appropriate. Fed. R. Civ. P. Rule 23(c)(4)(B).

5            Plaintiff requests the Court to certify two subclasses:

6       Subclass 1: [FDCPA class]: all members of the umbrella

7       class, from whom [defendants] attempted to collect, or

8       collected money for checks written for personal, family, or

9       household purpose, since June 29, 2004.

10      Subclass 2: [Due process and tort class]: All members of the

11      umbrella class from whom [defendants] attempted to collect,

12      or collected money, since June 29, 2003.

13  (Pls.' Mot. for Class Certification 9.)

14           Additionally, plaintiff suggests a third subclass based

15  on the acquisition of bank records by defendants. (<u>Id.</u>)

16  Defendants do not object to the definitions of these subclasses.

17  However, the court declines to grant certification as to proposed

18  _____

19      [13]    Defendants contend that plaintiff has the additional
    burden of presenting a suitable and realistic plan for the trial
20  of class claims.  Defendants support this assertion with an
    incomplete quotation from a factually dissimilar case.  (Defs.'
21  Opp'n to Pl.'s Mot. 25) (quoting <u>Zinser v. Accufix Research
    Inst., Inc.</u>, 253 F.3d 1180, 1189 (9th Cir. 2001))). That case,
22  and every other case cited to by defendants is support of this
    argument, refers to multistate class action claims.  <u>See, e.g.</u>,
23  <u>id.</u> at 1189 ("Because Zinser seeks certification of a nationwide
    class for which the law of forty-eight states potentially
24  applies, she bears the burden of demonstrating 'a suitable and
    realistic trial plan for the trial of class claims.'" (quotation
25  omitted)); <u>Valentino v. Carter-Wallace</u>, 97 F.3d 1227 (9th Cir.
    1996) (nationwide products liability tort class action); <u>Castano
26  v. Am. Tobacco Co.</u>, 84 F.3d 734 (5th Cir. 1996) (multistate
    tobacco class action); <u>Chin v. Chrysler Corp.</u>, 182 F.R.D. 448
27  (D.N.J. 1998) (class action requiring application of law from 52
    jurisdictions).  The court finds no relevant authority requiring
28  the imposition of this additional burden on plaintiff for this
    class action.

1  Subclass 3 because plaintiff has not alleged an underlying

2  claim.[14]   The court therefore finds the subclasses as denoted

3  above are suitable to proceed in this class action.

4  III. Conclusion

5           IT IS THEREFORE ORDERED that plaintiff's motion for

6  class certification be, and the same hereby is, GRANTED. The

7  court certifies the following umbrella class: All persons who

8  wrote checks in California to whom DATS mailed collection demands

9  concerning dishonored checks, since June 29, 2003, to the date

10 the class is certified.

11          The court further certifies the following subclasses:

12 (1) all members of the umbrella class, from whom DATS attempted

13 to collect, or collected money for checks written for personal,

14 family, or household purpose, since June 29, 2004; and (2) all

15 members of the umbrella class from whom [defendants] attempted to

16 collect, or collected money, since June 29, 2003.

17          Named plaintiff Kristy Schwarm shall represent the

18 umbrella class and all subclasses, with Paul Arons, O. Randolph

19 Bragg, Scott Shoblom, and Ronald Wilcox as class counsel. Class

20 counsel shall, on or before a date of ninety (90) days from the

21 date of this Order, cause to be mailed in the name of the clerk

22 by first class mail, postage prepaid, to all class members who

23 can be identified through reasonable efforts, a notice meeting

24 the requirements of Federal Rule of Civil Procedure 23(c)(2).

25

26          [14]   The court assumes that this subclass was based on
    plaintiff's motion to amend, in which plaintiff sought to add a
    claim for invasion of privacy based on the acquisition of bank
27  records.  However, upon the court's admonition during oral
    argument that only one of plaintiff's motions would be considered
28  at that time, plaintiff's counsel withdrew the motion to amend.

1          Class members may opt out by filing, within two (2)

2   months of the receipt of notice, written indication of their

3   request for exclusion in a post office box designated by class

4   counsel, from which class counsel shall receive and tabulate

5   requests for exclusion.  See Hawk Indus., Inc. v. Bausch & Lomb,

6   Inc., 59 F.R.D. 619, 625 (S.D.N.Y. 1973).  Class counsel shall

7   file with the clerk, within fourteen (14) days of the termination

8   of the period that class members are given to opt out, an

9   affidavit identifying the persons to whom notice has been mailed

10  and who have not timely requested exclusion.

11          This case is set for further status conference on

12  August 14, 2006 at 9:00 a.m.  Counsel shall file a written status

13  report no later than seven calendar days before the date of the

14  conference.

15  DATED:  March 4, 2006

16

17

18  _____
    WILLIAM B. SHUBB
19  UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

                                  21