UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

KRISTY SCHWARM, PATRICIA FORONDA, and JOSANN ANCELET, on behalf of themselves and others similarly situated,

    Plaintiffs,

  v.

HENRY CRAIGHEAD, an individual, DISTRICT ATTORNEY TECHNICAL SERVICES, LTD., a Nevada Corporation, dba COMPUTER SUPPORT SERVICES, aka CHECK RESTITUTION/PROSECUTION PROGRAM, JOHN Q. LAWSON, an individual, MARY A. CHASE, an individual, and DOES 1 through 20, inclusive,

    Defendants.

NO. CIV. 05-01304 WBS GGH

MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO DAMAGES

----oo0oo----

Plaintiffs Kristy Schwarm, Patricia Foronda, and Josann Ancelet filed this class action lawsuit against defendants Henry Craighead, District Attorney Technical Services, Ltd. (DATS), John Q. Lawson, and Mary A. Chase based on defendants' collection

1

efforts.  On May 5, 2008, the court granted plaintiffs' motion for summary judgment with respect to defendant Henry Craighead's liability under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p.  <u>Schwarm v. Craighead</u>, 552 F. Supp. 2d 1056, 1087 (E.D. Cal. 2008).  Plaintiffs now move for summary judgment with respect to damages resulting from Craighead's FDCPA violations.

I.   <u>Factual and Procedural Background</u>

To avoid repetition and because the factual background remains the same as in its May 5, 2008 Order, the court will limit its discussion to the factual and procedural events that are relevant to the pending motion.  <u>See</u> <u>id.</u> at 1063-68 (providing a detailed factual and procedural history of this case).

Craighead is the founder and chief executive officer of DATS, a company that contracted with twenty-five California district attorneys' offices to administer debt collection and diversion programs pursuant to California's Bad Check Diversion Act (BCDA), Cal. Penal Code §§ 1001.60-1001.67.  Based on Craighead's role in DATS' operations and the collection letters and procedures utilized, the court entered summary judgment against Craighead for violations of subsections 1692e(2)-(5), (9)-(11), (14), 1692f(1), and 1692g(a) of the FDCPA.  <u>Schwarm</u>, 552 F. Supp. 2d at 1087.  In the same Order, the court denied plaintiffs' motion for summary judgment with respect to damages and plaintiffs' federal and state procedural due process claims.  <u>Id.</u>; <u>see also</u> <u>id.</u> at 1082 (denying plaintiffs' motion for summary judgment with respect to damages due to plaintiffs' failure to

2

submit sufficient evidence).  The court also denied Craighead's cross-motion for summary judgment with respect to his personal liability under the FDCPA.  Id. at 1087.

The class members in this case include "[a]ll persons who wrote checks in California to whom DATS mailed collection demands concerning dishonored checks, since June 29, 2003" to March 4, 2006.  Schwarm v. Craighead, 233 F.R.D. 655, 664 (E.D. Cal. 2006).  "The FDCPA class," which the court certified as Subclass 1, is defined as "all members of the umbrella class, from whom DATS attempted to collect, or collected money for checks written for personal, family, or household purposes, since June 29, 2004" to March 4, 2006.  Id. at 664-65.[1]  On May 10, 2006, the court approved plaintiffs' form of class notice, which allowed potential class members to opt-out of the class or remain in the class "[b]y doing nothing."  (May 10, 2006 Order Ex. 1 at 2.)  When the deadline to withdraw from the class expired on August 7, 2006, "36,407 class members [had] not opted out." (Ables Decl. Oct. 14, 2006 ¶ 3.)

In August 2006, DATS filed Chapter 7 bankruptcy and the proceedings were automatically stayed pursuant to 11 U.S.C. § 362(a).  See In re Tucson Estates, Inc., 912 F.2d 1162, 1166 (9th Cir. 1990) ("A bankruptcy filing imposes an automatic stay of all litigation against the debtor.") (citing § 362(a)).  Although this court lifted the stay as to Craighead on September 21, 2006,

---

[1] The court also certified Subclass 2, the "Due Process and tort class," as "all members of the umbrella class from whom [defendants] attempted to collect, or collected money, since June 29, 2003." Id.  Because the award of damages in this Order is based on FDCPA violations, this Order applies only to Subclass 1.

3

the action against DATS and the remaining defendants remains stayed, thus this Order is neither the law of the case for nor has a preclusive effect against those defendants.

Plaintiffs now move for summary judgment against Craighead with respect to damages pursuant to the FDCPA. Specifically, plaintiffs seek 1) actual damages for the class in the amount of $771,061.03; 2) actual damages in the amount of $85.00 each for named plaintiffs Foronda and Ancelet; 3) statutory damages for the three named plaintiffs in the amount of $1,000.00 each; and 4) prejudgment interest in the amount of $50,854.73.[2]

II. <u>Discussion</u>

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case.

---

[2] While plaintiffs initially sought summary judgment with respect to an award of attorneys' fees and costs, plaintiffs subsequently requested that "the issue of plaintiffs' right to, and the amount of plaintiffs' reasonable attorneys' fees and costs and litigations expenses, [be] reserved for later determination." (Pls.' Am. Proposed Order 2:12-16.)

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial. <u>Id.</u>

Once the moving party meets its initial burden, the non-moving party "may not rely merely on allegations or denials in its own pleading," but must go beyond the pleadings and "by affidavits or as otherwise provided in [Rule 56,] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); <u>Celotex Corp.</u>, 477 U.S. at 324; <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135, 1137 (9th Cir. 1989).

In its inquiry, the court must view any inferences drawn from the underlying facts in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The court cannot engage in credibility determinations or weigh the evidence because these functions are reserved for the jury. <u>Anderson</u>, 477 U.S. at 255.

A.   <u>Actual Damages</u>

Based on a single violation of the FDCPA, a plaintiff is entitled to "any actual damage sustained by such person as a result of" the violation. 15 U.S.C. § 1692k(a)(1). In their motion for summary judgment, plaintiffs seek actual damages only for the $85.00 diversion fees plaintiffs paid DATS,[3] which

---

[3] The court recognizes that plaintiffs have not provided evidence that Craighead personally benefitted from DATS' receipt of the diversion fees. Nonetheless, because actual damages are measured by the loss plaintiffs incurred, not the benefit Craighead received, plaintiffs need not prove that Craighead

5

1  violated subsections 1692f(1) and 1692e(2) of the FDCPA. <u>Schwarm</u>
2  <u>v. Craighead</u>, 552 F. Supp. 2d 1056, 1081-82 (E.D. Cal. 2008).[4]
3            As indicated in Craighead's responses to plaintiffs'
4  interrogatories, DATS collected $574,466.00 in diversion fees
5  between July 1, 2004 and September 30, 2005.  (Arons Decl. Ex. 1
6  at 22-23 (Defs.' Resps. to Pls.' Interrogs.).)  With respect to
7  diversion fees collected after September 30, 2005 and until the
8  close of the class period on March 4, 2006, the only evidence
9  plaintiffs provide is an estimated total of $196,595.03, which it
10 calculated by pro-rating the monthly average of the diversion
11 fees DATS collected between July 1, 2004 and September 30, 2005.
12 (Arons Am. Decl. ¶ 2.)  In a supplemental declaration, however,
13 Craighead contends that the total diversion fees collected from
14 September 30, 2005 through March 4, 2006 was $166,921.05,[5] thus
15 the additional $29,673.98 proffered by plaintiffs remains

---

personally benefitted from the diversion fees.  <u>See</u> <u>id.</u> §
1692k(a)(1) (upon a finding of liability, a court may award a
plaintiff "any actual damage <u>sustained by such person</u> as a result
of such failure") (emphasis added); <u>Green v. Occidental Petroleum</u>
<u>Corp.</u>, 541 F.2d 1335, 1341-42 (9th Cir. 1976) ("[T]he proper
measure of damages is what the [plaintiffs] lost as a result of
the defendant's wrong, not what the defendant gained.").

    [4]   In opposition to plaintiffs' pending motion for summary
judgment, Craighead argues that the court cannot award actual
damages based on the diversion fees because California Penal Code
section 1001.65 authorized the fees.  While the diversion fees
would not have violated the FDCPA if section 1001.65 of the BCDA
authorized them, the court concluded in its previous Order that
the BCDA did not authorize the $85.00 diversion fees.  <u>Id.</u> at
1080-82.

    [5]   The court calculated this amount by subtracting the
total fees that Craighead's interrogatory responses stated were
collected between July 1, 2004 and September 30, 2005
($574,466.00) from the total diversion fees Craighead indicated
were collected between July 1, 2004 and March 4, 2006
($741,387.05).  (Supp. Craighead Decl. Ex. A.)

6

disputed. Nonetheless, it is undisputed that at least $741,387.05 in illegal diversion fees was collected between July 1, 2004 and March 4, 2006. Because there is not a genuine issue of material fact with respect to the $741,387.05, the court will grant plaintiffs' motion for summary judgment on actual damages in that amount. The court's award of those actual damages does not preclude plaintiffs from seeking to prove additional actual damages.

Without providing an explanation or supporting authority, plaintiffs also request summary judgment with respect to a separate award of actual damages for the $85.00 diversion fees that named plaintiffs Foronda and Ancelet paid. While § 1692k(a)(2)(B) provides for a separate award of statutory damages for named plaintiffs, it does not expressly provide for named plaintiffs to receive an award of actual damages that is separate from the actual damages awarded to the class. 15 U.S.C. § 1692k(a)(2)(B). As members of the class, the actual damages the named plaintiffs incurred are also necessarily included in the actual damages awarded to the class, and thus any separate award would allow for double-recovery by the named plaintiffs. As members of the class, Foronda and Ancelet must therefore recover their actual damages via the damages awarded to the class.

Accordingly, the court will grant plaintiffs' motion for summary judgment with respect to actual damages in the amount of $741,387.05 awarded to the class and deny plaintiffs' motion for summary judgment with respect to a separate award of actual damages for named plaintiffs Foronda and Ancelet.

///

B. <u>Additional Statutory Damages</u>

A single violation of the FDCPA also entitles a plaintiff to seek a limited amount of statutory damages. Specifically, "the court"[6] may award named plaintiffs "additional damages . . . not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A)-(B). "Without regard to a minimum individual recovery," the court may also award additional statutory damages for the remainder of the class members that cannot "exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." <u>Id.</u> § 1692k(a)(2)(B). In determining whether to award statutory damages and the amount of any such award, the court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional." <u>Id.</u> § 1692k(b)(2). The factors that subsection 1692k(b)(2) requires the court to examine in its determination of statutory damages preclude this court from determining whether plaintiffs are entitled to such an award at this juncture. Most notably, whether Craighead's "noncompliance

---

[6] While § 1692k refers only to "the court" when providing for the award of damages, courts have concluded that "a party upon timely demand is entitled to a jury trial in an action for damages under the [FDCPA]." <u>Sibley v. Fulton DeKalb Collection Serv.</u>, 677 F.2d 830, 831-32 (11th Cir. 1982); <u>accord</u> <u>Kobs v. Arrow Serv. Bureau, Inc.</u>, 134 F.3d 893, 897 (7th Cir. 1998); <u>see also</u> <u>Voris v. Resurgent Capital Servs.</u>, 494 F. Supp. 2d 1156, 1162-63 (S.D. Cal. 2007) ("Although the Ninth Circuit has apparently not addressed the issue, other circuits have found that a plaintiff has a right to a jury trial in FDCPA actions."). Both parties have demanded a jury trial in this case. (Compl. 18:14-15; Answer 11:15-17; Am. Compl. 14:19-20; Am. Answer 11:15-17.)

was intentional" and the "nature" of such noncompliance are clearly disputed factual issues. Harris v. Itzhaki, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (citation omitted). Craighead contends that he believed he was lawfully implementing the BCDA at the request of and under the direction of California district attorney's offices. These contentions, if believed by the fact finder, would weigh in favor of denying or limiting an award of statutory damages. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."); S.E.C. v. Koracorp Indus., 575 F.2d 692, 699 (9th Cir. 1978) ("The courts have long recognized that summary judgment is singularly inappropriate where credibility is at issue. Only after an evidentiary hearing or a full trial can these credibility issues be appropriately resolved.").[7]

---

[7] The court is also unable to award statutory damages for the class because plaintiffs have failed to establish, let alone provide evidence about, Craighead's net worth. Plaintiffs' decision not to provide evidence about Craighead's net worth stems from their willingness to forgo an award of statutory damages for the class because plaintiffs doubt that Craighead has sufficient assets to satisfy a judgment for only actual damages. Based on this same reasoning, plaintiffs also express a willingness to voluntarily dismiss their remaining claims for actual damages stemming from bad check fees DATS collected and the claims pertaining to Subclass 2. Plaintiffs' statements ignore Federal Rule of Civil Procedure 23(e), which allows "claims, issues, or defenses of a certified class [to] be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e) (emphasis added); see also Diaz v. Trust Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members, and therefore must inquire into the terms and circumstances of any dismissal or compromise to ensure that

Accordingly, the court must deny plaintiffs' motion for summary judgment with respect to an award of statutory damages for the named plaintiffs.

C.  Prejudgment Interest

"Prejudgment interest is a measure that 'serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.'" Schneider v. County of San Diego, 285 F.3d 784, 789 (9th Cir. 2002) (citation omitted).  Although the FDCPA does not provide for prejudgment interest, "courts may allow prejudgment interest even though the governing statute is silent." Frank Music Corp. v. Metro-Goldwyn-Mayer Inc., 886 F.2d 1545, 1550 (9th Cir. 1989).  Whether plaintiffs are entitled to prejudgment interest under the FDCPA is determined by statutory interpretation and federal common law.  Schneider, 285 F.3d at 789; see also In re Exxon Valdez, 484 F.3d 1098, 1100-01 (9th Cir. 2007) (noting that "prejudgment interest is a substantive aspect of a plaintiff's claim," thus a federal court would generally apply state prejudgment interest law to state law claims).

Even assuming plaintiffs are entitled to prejudgment interest on their FDCPA damages--which plaintiffs' counsel hastily conclude--genuine issues of material fact would still

---

it is not collusive or prejudicial.") (citations omitted).  It also appears that plaintiffs have not considered how to distribute an actual damages award that is based only on diversion fees when not all of the class members paid diversion fees.

10

preclude the court from granting plaintiffs' request for prejudgment interest. Specifically, when "deciding if and how much prejudgment interest should be granted, a district court must examine . . . matters encompassed within the merits of the underlying action." Osterneck v. Ernst & Whinney, 489 U.S. 169, 176 (1989). For example, a court may consider

> whether prejudgment interest is necessary to compensate the plaintiff fully for his injuries, the degree of personal wrongdoing on the part of the defendant, the availability of alternative investment opportunities to the plaintiff, whether the plaintiff delayed in bringing or prosecuting the action, and other fundamental considerations of fairness.

Id.; see also id. at 176 n.2 ("We offer this list of factors, taken from lower court cases, merely to demonstrate that the inquiry involves issues intertwined to a significant extent with the merits of the underlying controversy.").

Similar to the court's inability to assess Craighead's intent with respect to an award of statutory damages, the court is also unable to assess Craighead's "degree of personal wrongdoing" when determining whether to award prejudgment interest. Id. at 176. In this case, not only may Craighead's relationship with the district attorney's offices limit his degree of "personal wrongdoing," but "fundamental considerations of fairness" would also lean against requiring Craighead to reimburse plaintiffs for their inability to access money if he himself could not benefit from or access the funds. See Blau v. Lehman, 368 U.S. 403, 414 (1962) ("'[I]nterest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable.'"); see also

11

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("'On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'") (citation omitted).

Accordingly, because the evidence presently before the court does not establish that plaintiffs are entitled to prejudgment interest as a matter of law, the court will deny, without prejudice, plaintiffs' request for prejudgment interest.

IT IS THEREFORE ORDERED that (1) plaintiffs' motion for summary judgment with respect to an award of actual damages against Craighead in the amount of $741,387.05 be, and the same hereby is, GRANTED; (2) plaintiffs' motion for summary judgment with respect to an award of actual damages for named plaintiffs Foronda and Ancelet and an award of statutory damages for the three named plaintiffs be, and the same hereby is, DENIED; and (3) plaintiffs' motion for summary judgment with respect to an award of prejudgment interest is DENIED.[8]

DATED:  August 5, 2008

_[signature]_
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[8] While "the court may direct entry of final judgment as to one or more, but fewer than all, claims or parties," it declines to do so at this time because plaintiffs have not sufficiently addressed the consequences of such a judgment for the entire class. See Fed. R. Civ. P. 54(b) (allowing the court to direct entry of a partial judgment "only if the court expressly determines that there is no just reason for delay").