UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

KRISTY SCHWARM, PATRICIA
FORONDA, and JOSANN ANCELET,
on behalf of themselves and
others similarly situated,

    Plaintiffs,

  v.

HENRY CRAIGHEAD, an individual,
DISTRICT ATTORNEY TECHNICAL
SERVICES, LTD., a Nevada
Corporation, dba COMPUTER
SUPPORT SERVICES, aka CHECK
RESTITUTION/PROSECUTION PROGRAM,
JOHN Q. LAWSON, an individual,
MARY A. CHASE, an individual;
and DOES 1 through 20, inclusive,

    Defendants.
_____/

NO. CIV. 05-01304 WBS GGH

<u>ORDER RE: MOTION FOR SUMMARY
JUDGMENT AND MOTION FOR
RECONSIDERATION</u>

----oo0oo----

          Defendant Henry Craighead founded defendant District Attorney Technical Services, Ltd. ("DATS"), to collect debts pursuant to California's Bad Check Diversion Act ("BCDA"), Cal. Penal Code §§ 1001.60-1001.67.  Under the BCDA, district attorneys' offices could establish diversion programs for debtors

1

who wrote bad checks and contract with private entities, such as DATS, to conduct the programs. Cal. Penal Code § 1001.60. Based on DATS' collection efforts, plaintiff Kristy Schwarm initiated this class action on June 29, 2005, alleging claims for 1) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p; 2) violations of the Civil Rights Act, 42 U.S.C. § 1983, based on alleged procedural due process violations; 3) state constitutional procedural due process violations; 4) fraudulent misrepresentation; and 5) negligent misrepresentation.

On March 4, 2006, this court certified the case as a class action for "[a]ll persons who wrote checks in California to whom DATS mailed collection demands concerning dishonored checks, since June 29, 2003," and up until the date of the court's Class Certification Order.[1] (Mar. 4, 2006 Order 20 (Docket No. 42).) The court named Schwarm as the class representative and subsequently granted plaintiffs' motion to add plaintiffs Patricia Foronda and Josann Ancelet as class representatives. (May 25, 2007 Order 5 (Docket No. 134).)

After DATS filed Chapter 7 bankruptcy, this action was automatically stayed on August 18, 2006, pursuant to 11 U.S.C. § 362(a). On September 20, 2006, this court lifted the automatic stay as to Craighead only and, on May 5, 2008, granted

---

[1] The court also certified the following subclasses: "(1) all members of the umbrella class, from whom DATS attempted to collect, or collected money for checks written for personal, family, or household purposes, since June 29, 2004; and (2) all members of the umbrella class from whom [defendants] attempted to collect, or collected money, since June 29, 2003." (Mar. 4, 2006 Order 20 (Docket No. 42).)

2

plaintiffs' motion for summary judgment with respect to Craighead's violations of subsections 1692e(2)-(5), (9)-(11), (14), 1692f(1), and 1692g(a) of the FDCPA. Schwarm v. Craighead, 552 F. Supp. 2d 1056 (E.D. Cal. 2008) ("Schwarm I"). In the same order, the court denied plaintiffs' motion for summary judgment on their claims based on alleged violations of their federal and state procedural due process rights. Id. at 1082-87. Three months later, plaintiffs sought summary judgment on the issue of damages, and the court awarded plaintiffs actual damages against Craighead in the amount of $741,387.05. Schwarm v. Craighead, No. 2:05-1304, 2008 WL 3286797 (E.D. Cal. Aug. 6, 2008) ("Schwarm II").

        In granting plaintiffs' motions for summary judgment, the court found that Craighead was personally liable for violations of the FDCPA and the resulting damages based on his collection efforts on behalf of DATS. Schwarm I, 552 F. Supp. 2d at 1070-74. In both cases, the court emphasized that its findings would neither have a preclusive effect nor serve as the law of the case as to DATS because the case against it was stayed due to its pending bankruptcy. Id. at 1068 n.8; Schwarm II, 2008 WL 3286797, at *1.

        In DATS' pending bankruptcy, plaintiffs filed claims in excess of four million dollars and ultimately received $160,242.43 from the bankruptcy estate.[2] (Pls.' Req. for

---

[2] The court takes judicial notice of the Trustee's Final Report (Pls.' Req. for Judicial Notice Ex. 3) and the Final Decree (id. Ex. 4) from DATS' bankruptcy case. See Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 857 n.1 (9th Cir. 2008) ("We take judicial notice of the bankruptcy court order, because it is

3

Judicial Notice Ex. 3.)  After the bankruptcy court issued a Final Decree indicating that the administration of the estate was complete, the automatic stay as to DATS was lifted.  (Docket No. 213.)

Now, plaintiffs move for summary judgment against DATS based on the exact conduct and damages at issue in their prior motions for summary judgment against Craighead.  Specifically, plaintiffs seek summary judgment against DATS with respect to its alleged violations of subsections 1692e(2)-(5), (9)-(11), (14), 1692f(1), and 1692g(a) of the FDCPA and joint liability for $741,387.05 in actual damages.  Plaintiffs also seek an award against Craighead and DATS of $1,000.00 in statutory damages for each named plaintiff under subsection 1692k(a)(2)(A).  Lastly, plaintiffs request the court to enter final judgment against Craighead and DATS, holding them jointly and severally liable for actual damages of $741,387.05 and statutory damages of $3,000.00 and attorney's fees and costs pursuant to § 1692k(a)(3).  DATS filed a Statement of Non-Opposition to the motion and Craighead filed a document titled "Motion to Dismiss Summary Judgment upon New Evidence for the Defense," which the court will construe as a motion for reconsideration of the court's decisions in Schwarm I and Schwarm II.

1.  Violations of the FDCPA

The FDCPA governs the conduct of debt collectors, which the Act defines as "any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose

---

a matter of public record.").

4

of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Courts have routinely concluded that corporations constitute "persons" under subsection 1692(a)(6) and may thereby be liable as a "debt collectors" under the Act. E.g., Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507 (9th Cir. 1994); see also 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals . . . ."); FCC v. AT&T Inc., --- S.Ct. ----, ----, 2011 WL 691243, at *5 (2011) ("We have no doubt that 'person,' in a legal setting, often refers to artificial entities. The Dictionary Act makes that clear.");; compare 15 U.S.C. § 1692a(6), with 15 U.S.C. § 1692a(3) (defining "consumer" as "any natural person obligated or allegedly obligated to pay any debt") (emphasis added). DATS, a corporation that exclusively engaged in the practice of collecting debts, is therefore subject to the FDCPA.

In its May 2, 2008, Order, the court held Craighead personally liable for violations of subsections 1692e(2)-(5), (9)-(11), (14), 1692f(1), and 1692g(a) of the FDCPA based on DATS' collection efforts. Craighead's personal liability derived from his role within DATS, which included serving as its founder, chief executive officer, president, and on its Board of Directors, designing its automated software, managing and maintaining its software program and computer system, marketing

5

its products, negotiating its contracts with district attorneys' offices, managing its collection efforts, and interfacing with clients and debtors.  Schwarm I, 552 F. Supp. 2d at 1073-74. Although the court's prior findings are not the law of the case as to DATS and do not have preclusive effect, the court's discussion throughout its order illustrates that Craighead's conduct giving rise to his liability under the FDCPA was indistinguishable from that of DATS.

More importantly, in light of DATS' non-opposition to plaintiffs' motion for summary judgment, the court incorporates its prior analysis herein, id. at 1074-82, and thereby concludes that DATS' conduct violated subsections 1692e(2)-(5), (9)-(11), (14), 1692f(1), 1692f(1), and 1692g(a) of the FDCPA for the reasons explained in detail in its prior order.

Similarly, the court's prior award of $741,387.05 in actual damages against Craighead was based exclusively on the diversion fees that DATS collected.  While DATS was able to dispute the amount or its liability based on those fees in the pending motion, it has declined to do so and the court therefore incorporates its prior analysis herein.  See Schwarm II, 2008 WL 3286797, at *2-3.

Accordingly, the court will grant plaintiffs' motion for summary judgment with respect to DATS' violations of the aforementioned subsections of the FDCPA and liability for actual damages in the amount of $741,387.05.

2.  Statutory Damages

Based on a single violation, the FDCPA allows the court to award named plaintiffs "additional damages . . . not exceeding

6

$1,000." 15 U.S.C. § 1692k(a)(2)(A)-(B). In determining whether to award statutory damages and the amount of any such award, the court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." Id. § 1692k(b)(1).

Plaintiffs previously sought an award of statutory damages for the named plaintiffs and the court denied their motion on that issue, concluding that whether Craighead's "noncompliance was intentional" was a disputed factual issue. In opposition to that motion, Craighead represented that he believed he was lawfully implementing the BCDA at the request of and under the direction of California district attorneys' offices. Although he has not filed a similar declaration in opposition to the pending motion, the court will not interpret the silence of a pro se party as a concession. As the court previously concluded, if Craighead believed he was lawfully implementing the BCDA at the request of and under the direction of California district attorneys' offices, plaintiffs would be entitled to little, if any, statutory damages under § 1692k(a)(2).

It is also difficult for the court to find that the "nature" of Craighead and DATS' noncompliance is severe enough to merit statutory damages when DATS' collection efforts were performed pursuant to contracts with district attorneys' offices. While DATS' procedures did not comply with the FDCPA and did not follow all the procedures required for a bad check diversion program under the BCDA, see Schwarm I, 552 F. Supp. 2d at 1078-79, the court cannot overlook the fact that DATS and Craighead

operated under contracts with district attorneys' offices. A lay individual contracting to work with a district attorney's office should be able to maintain some level of confidence that his conduct pursuant to that contract comports with the law.[3]

Accordingly, the court will deny plaintiffs' motion for summary judgment on the issue of statutory damages because a genuine issue of material fact exists with respect to whether Craighead's violations of the FDCPA were intentional and plaintiffs have failed to show that the "nature" of the noncompliance merits an award.

### 3. Abandonment of Plaintiffs' Remaining Claims

In addition to their claims for violations of the FDCPA and federal and state procedural due process rights, plaintiffs' First Amended Complaint also alleges state law claims for fraudulent and negligent misrepresentation. Plaintiffs now indicate that they do not intend to pursue their remaining state law claims as the actual damages awarded against DATS and Craighead exceed defendants' assets. Plaintiffs also appear to

---

[3] The significance of the district attorneys' involvement with the process is further illustrated by Congress's amendment of the FDCPA in 2006 to exempt qualifying private entities that contract with district attorneys to operate "bad check enforcement programs." 15 U.S.C. § 1692p; see also Schwarm I, 552 F. Supp 2d at 1069 (concluding that § 1692p does not apply retroactively to shield Craighead from liability under the FDCPA).

To counter the significance of the involvement of the district attorneys' offices, plaintiffs submit a letter from the Mendocino County District Attorney's Office, informing DATS and Craighead that the office had "reviewed the lawsuit pending against" them and expressing concerns about DATS' collection letters and procedures. (Pls.' App'x Ex. 5 (Docket No. 208).) Notably, however, none of the district attorneys' offices expressed concerns about DATS collection procedures prior to this lawsuit.

8

have abandoned their remaining claims for actual damages stemming from bad check fees DATS collected, see Schwarm I, 552 F. Supp. 2d at 1080 n.17, the claims pertaining to Subclass 2, and their claim for statutory damages for the class.

Pursuant to Federal Rule of Civil Procedure 23(e), however, "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e) (emphasis added); see also Diaz v. Trust Terr. of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members, and therefore must inquire into the terms and circumstances of any dismissal or compromise to ensure that it is not collusive or prejudicial.") (citations omitted).

Rule 23(e) specifically provides:

> The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

While Rule 23(e) does not provide exceptions to its notice requirements, courts have excused compliance with the notice requirements when doing so would not prejudice the class. See Gomez by Hernandez v. O'Connell, No. 93 C 3268, 1996 WL 51202, at *8 (N.D. Ill. Jan. 30, 1996) ("Although the language of Rule 23(e) is mandatory in character, there are exceptions to the notice requirements. . . . One exception is when the court finds dismissal will not result in any prejudice to the interests of absent class members."); Austin v. Pa. Dep't of Corr., 876 F. Supp. 1437, 1455 (E.D. Pa. Jan. 17, 1995) ("Although Rule 23(e) states without exception that 'notice of the proposed dismissal or compromise shall be given,' courts have consistently held that notice to class members is required only when consistent with the rule's purpose--the protection of absent class members.").

Here, DATS' bankruptcy estate is closed and plaintiffs have received only $160,242.43 from the estate--only slightly more than twenty percent of the actual damages awarded to plaintiffs herein. Requiring notice to the 36,407 class members about plaintiffs' abandonment of the aforementioned claims and issues would be a futile exercise when defendants' financial status would prevent any further recovery for plaintiffs if these claims were successfully pursued. The court therefore approves plaintiffs' decision to abandon the remainder of its claims and issues.

    4.   Attorney's Fees and Costs

Plaintiffs request an award of attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3), which entitles plaintiffs in a successful action under the FDCPA to "the costs of the action,

together with a reasonable attorney's fee as determined by the court." While § 1692k(a)(3) clearly entitles plaintiffs to their attorney's fees and costs, the court will address any such award when plaintiffs file a motion for attorney's fees and their Bill of Costs.

### 5. Craighead's Motion for Reconsideration

A district court may grant a motion for reconsideration under Federal Rule of Civil Procedure 59(e) "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) (internal quotation marks omitted). In his motion for reconsideration, Craighead indicates that, in a case alleging FDCPA and state law claims against an entity similar to DATS, the jury returned a verdict in favor of defendant. Assuming the claims and facts in that case are analogous to the claims and facts in the case at hand, a jury verdict contrary to this court's prior decision does not amount to "an intervening change in controlling law." Accordingly, because Craighead has not identified a reason warranting reconsideration under Rule 59(e), the court will deny his motion for reconsideration of the court's decisions in Schwarm I and Schwarm II.

IT IS HEREBY ORDERED that

(1) plaintiffs' motion for summary judgment with respect to DATS' violations of subsections 1692e(2)-(5), (9)-(11), (14), 1692f(1), and 1692g(a) of the FDCPA be, and the same hereby is, GRANTED;

11

            (2)  plaintiffs' motion for summary judgment with respect to an award of actual damages against DATS in the amount of $741,387.05 be, and the same hereby is, GRANTED;

            (3)  plaintiffs' motion for summary judgment with respect to statutory damages be, and the same hereby is, DENIED;

            (4)  plaintiffs' motion for summary judgment with respect to attorney's fees and costs is DENIED without prejudice; and

            (5)  Craighead's motion for reconsideration is DENIED.

        The Clerk of the Court is instructed to enter final judgment in favor of plaintiffs against Craighead and DATS, holding them jointly and severally liable to plaintiffs in the amount of $741,387.05.

DATED:  March 31, 2011

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE