Paul Arons, State Bar #84970
LAW OFFICE OF PAUL ARONS
685 Spring Street, #104
Friday Harbor, WA 98250
Tel:  (360) 378-6496
Fax: (360) 37806498
lopa@rockisland.com

O. Randolph Bragg, IL. Bar #06221983
HORWITZ, HORWITZ & ASSOCIATES
25 East Washington, Suite 900
Chicago, IL 60602
(312) 372-8822

Ronald Wilcox, State Bar #176601
LAW OFFICE OF RONALD WILCOX
1900 The Alameda, Suite 530
San Jose, CA 95126
Tel:  (408) 296-0400
Fax: (408) 296-0486
ronaldwilcox@yahoo.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTY SCHWARM, PATRICIA FORONDA and JOSANN ANCELET on behalf of themselves and others similarly situated,<br><br>              Plaintiffs,<br><br>vs.<br><br>HENRY CRAIGHEAD, et al.<br><br>           Defendants. | CIV. NO. 2:05−CV−01304−WBS−GGH<br><br>CLASS ACTION<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS, AND FOR CLASS MEMBER INCENTIVE AWARD<br><br>Date: TBD<br>Time: TBD<br>Courtroom 5 |

# Table of Contents

Table of Authorities ............................................................................................................ iii

I. INTRODUCTION ............................................................................................................ 1

II. NOTICE OF THIS FEE MOTION SHOULD BE PROVIDED TO CLASS MEMBERS ........ 2

III. FACTUAL BACKGROUND ............................................................................................ 2

    A.  The Plaintiffs ........................................................................................................... 2

    B. Henry Craighead and District Attorney Technical Support, Ltd. ................................. 4

    C.  DATS' Check Collection Operation ........................................................................ 4

IV. PROCEDURAL HISTORY ............................................................................................ 5

    A.  Schwarm v. DATS ................................................................................................. 5

    B.  In Re DATS .......................................................................................................... 8

V. PLAINTIFFS ARE ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS FOR PREVAILING ON THEIR CLAIMS UNDER THE FDCPA .............................................................................................. 9

    A.  An Award of Reasonable Attorneys' Fees and Costs Is Mandatory to Prevailing Plaintiffs in FDCPA Cases ..................................................................... 9

    B.  A Fee Award Must Be Calculated by The Lodestar Adjustment Method ...................... 10

    C.  Plaintiffs Vindicated Important Consumer Rights Underlying the FDCPA ....................... 12

    D.  The Novelty and Difficulty of the Questions Involved ................................................ 13

    E.  The Time and Labor Required .................................................................................. 14

    F.  The Skills Required to Perform the Legal Services Properly ..................................... 14

    G.  Whether the Fee Is Fixed or Contingent .................................................................. 14

    H.  The Amount Involved and the Results Obtained ....................................................... 14

    I.  The Undesirability of the Case ................................................................................ 15

    J.  The Experience, Reputation, and Ability of the Attorneys ......................................... 15

    K.  The Prevailing Market Rate for Similar Work Performed By Attorneys of Comparable Skill, Experience and Reputation ......................................................... 15

        1.  Previous Awards to Plaintiffs' Counsel in Similar Cases ........................................... 15

        2. Declarations of Local Attorneys ............................................................................. 16

        3.  Awards to Other Attorneys of Similar Experience for Comparable Cases ................. 17

    L.  Lodestar Calculation ............................................................................................ 18

VI. PLAINTIFF'S ATTORNEYS ARE ENTITLED TO AN AWARD OF COSTS AND LITIGATION EXPENSES ............................................................................................ 18

VII.  THE CLASS REPRESENTATIVES SHOULD BE AWARDED AN INCENTIVE
        PAYMENT FOR THEIR PARTICIPATION IN THIS LITIGATION ................................ 19

VIII.  CONCLUSION ................................................................................................................ 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Federal Cases**

*Aguilar v. Melkonian Enters., Inc.,*
2007 WL 201180, 2007 U.S. Dist. LEXIS 8146 (E.D. Cal. Jan. 24, 2007), .........................17

*Baker v. G. C. Services Corp.,*
677 F.2d 775 (9th Cir. 1982) ...............................................................................................9

*Barjon v. Dalton,*
*132 F.3d 496 (9th Cir. 1997).* ..........................................................................................11

*Beecham v. City of W. Sacramento,*
2009 U.S. Dist. LEXIS 111572 (E.D. Cal. Nov. 16, 2009) .................................................17

*Blum v. Stenson,*
465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) ...................................................11

*Camacho v. Bridgeport Financial, Inc.,*
523 F.3d 973 (9th Cir. 2008) ....................................................................................11, 16, 18

*Campos v. Western Dental Services, Inc.*
 2007 WL 2050976 (N.D. Cal.) ...........................................................................................16

*Cancio v. Financial Credit Network, Inc.,*
2005 U.S. Dist. LEXIS 13626 (N.D. Cal. 2005) ................................................................16

*Carrizosa v. Legal Recovery Services,*
2011 WL 1674964 (N.D.Cal., May 3, 2011) ......................................................................16

*Chalmers v. City of Los Angeles,*
796 F.2d 1205, (9th Cir. 1986), reh'g denied, amended on other grounds,
808 F.2d 1373 (9th Cir. 1987) ............................................................................................11

*City of Riverside v. Rivera,*
477 U.S. 561, 106 S. Ct. 2686, 91 L. Ed. 2d 466, (1986)...................................................10

*Commissioner v. Jean,*
496 U.S. 154, 110 S.Ct. 2316 (1990).................................................................................18

*Davis v. City of San Francisco,*
976 F.2d 1536 (9th Cir. 1992) .......................................................................................11, 18

*Defenbaugh v. JBC & Assocs,* 2004 U.S.Dist.LEXIS 16256,
 *aff'd by unpublished mem.,* 2006 U.S.App.LEXIS 19930 (9th Cir. 2006) ...........................16

*Ferland v. Conrad Credit Corp.*,
244 F.3d 1145 (9th Cir. 2001) .............................................................................10

*Gates v. Deukmejian,* 977 F.2d 1300 (9th Cir. 1992) .........................................11

*Gradisher v. Check Enforcement Unit, Inc.*,
210 F. Supp. 2d 907 (W.D. Mich. 2002) ...........................................................8, 13

*Hensley v. Eckerhart*,
461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)...............................10, 11

*Hopson v. Hanesbrands, Inc.*,
2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) .....................................19

*Hunt v. Imperial Merch. Servs.*,
2010 WL 3958726,,2010 U.S. Dist. LEXIS 111243 (N.D. Cal. Oct. 7, 2010) ....16

*Ilick v. Miller*,
68 F. Supp. 2d 1169 (D. Nev. 1999).....................................................................18

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir., 2000) ...............................................................................19

*In re SmithKline Beckman Corp.*,
751 F. Supp. 525 (E.D. Pa. 1990) .........................................................................19

*Jordan v. Multnomah County*,
815 F.2d 1258 (9th Cir. 1987) ........................................................................10, 18

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975),
*cert. denied* 425 U.S. 951, 48 L. Ed. 2d 195, 96 S. Ct. 1726 (1976)...................10

*McAfee v. Metropolitan Life Ins. Co.*,
625 F. Supp. 2d 956 (E.D. Cal. 2008)...................................................................17

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*,
618 F.3d 988 (9th Cir. Cal. 2010).........................................................................2

*Missouri v. Jenkins*,
491 U.S. 274 (1989)...............................................................................................11

*Newhouse v. Robert's Ilima Tours, Inc.*,
708 F.2d 436 (9th Cir. 1983) ................................................................................10

iv

*Palmer v. Far West Collection Servs.*,
2008 U.S. Dist. LEXIS 105703 (N.D. Cal. Dec. 18, 2008) ................................16

*Schofield v. Metro. Life Ins. Co.*,
2009 U.S. Dist. LEXIS 36312 (E.D. Cal. Apr. 16, 2009)....................................17

*Schwarm v. Craighead*,
233 F.R.D. 655 (E.D. Cal. 2006) ...................................................................6, 14

*Schwarm v. Craighead*,
552 F. Supp. 2d 1056 (E.D. Cal. May 5, 2008) .............................................7, 12

*Schwarm v. Craighead*,
2008 U.S. Dist. LEXIS 70319 (E.D. Cal. Aug. 5, 2008) ......................................8

*Sousa v. Miguel*,
32 F.3d 1370 (9th Cir. 1994) .............................................................................18

*Stanton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .............................................................................19

*Tolentino v. Friedman*,
46 F.3d 645 *(7th Cir. 1995)*, *cert. denied*, 515 U.S. 1160, 115 S. Ct. 2613 (1995)...............9

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
896 F.2d 403 (9th Cir. 1990) .............................................................................11

*Webb v. Ada County*,
285 F.3d 829 (9th Cir. 2002) .............................................................................18

*Yeager v. Bowlin*,
2010 U.S. Dist. LEXIS 63399(E.D. Cal. June 3, 2010) ......................................17


**Federal Statutes**

11 U.S.C. § 362(c)(2)(A) ......................................................................................8

15 U.S.C. §§1692(a) and (b)..................................................................................9

15 U.S.C. §1692(e). ..............................................................................................9

15 U.S.C. §§ 1692e(2), (3), (4), (5), (9), (11) and (14)........................................12

15 U.S.C. § 1692f(1)............................................................................................12

15 U.S.C. § 1692g(a) .................................................... 12

15 U.S.C. §1692k(a)(3). ................................................. 9


**<u>State Statutes</u>**

Cal. Penal Code 476a ................................................... 1

Cal. Pen. C. §§ 1001.60, et seq ........................................ 7

Cal. Pen. C. § 1001.65 ................................................ 12

# I. INTRODUCTION

In this action plaintiffs established that defendants' debt collection practices not only ran afoul of California's statutes permitting bad check diversion programs; they also run headlong into the core consumer protections of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq.

This action arose from events that took place more than seven years ago in March 2004, when Kristy Schwarm, a mother of six, wrote two checks, one to a local Walmart and one to the FoodMaxx in Ukiah, California, totaling $152.76. Because of unrecorded ATM withdrawals, Ms. Schwarm was not aware that she had already run up $720 in overdraft protection fees when she wrote these checks. The checks did not clear. On August 2, 2003 plaintiff Patricia Foronda wrote a check in the amount of $96.63 to Rosenbalm Rockery in Madera, California. She thought there were funds sufficient to cover the check. However, her husband had deposited the money that would have covered this check in the wrong account, and the check to Rosenbalm Rockery did not clear. Josann Ancelet wrote a check to the local Target store which did not clear. There is no evidence that any of the plaintiffs had known their checks would not clear, or intended to defraud the merchants, the two essential elements of criminal check writing.[1] The plaintiffs, however, each received a letter on district attorney letterhead, threatening to arrest them unless they paid exorbitant fees that this Court has now ruled were not permitted by law. The letters were intended to scare the recipients into believing, falsely, that they could be arrested at any time if they did not pay the $130 in fees demanded in each letter. This class action lawsuit followed,

---

1. Penal Code 476a provides, in pertinent part:

(a) Any person who for himself or as the agent or representative of another or as an officer of a corporation, **willfully, with intent to defraud**, makes or draws or utters or delivers any check, or draft or order upon any bank or depositary, or person, or firm, or corporation, for the payment of money, knowing at the time of such making, drawing, uttering, or delivering that the maker or drawer or the corporation has not sufficient funds in, or credit with said bank or depositary, or person, or firm, or corporation, for the payment of such check, draft, or order and all other checks, drafts, or orders upon such funds then outstanding, in full upon its presentation, although no express representation is made with reference thereto, is punishable by imprisonment in the county jail for not more than one year, or in the state prison.

and this Court ruled that defendants were violating state and federal laws intended to protect consumers from predatory debt collectors.

In a case of first impression, this Court found for plaintiffs, finding multiple violations of the FDCPA. To achieve this result, plaintiffs conducted extensive discovery, successfully obtained class certification, prevailed on three summary judgment motions, and participated in the corporate bankruptcy filed by defendant District Attorney Technical Services, Ltd. (DATS). This took hundreds of hours, and required plaintiffs' counsel to advance over $50,000.00 in costs. In the end, this Court ruled that private contractors who collect checks under the guise of the controversial "bad check diversion programs," in which check collectors contract with district attorneys for permission to operate in the DA's name and authority," are covered by the same consumer protection laws that govern the conduct of other debt collectors.

## II. NOTICE OF THIS FEE MOTION SHOULD BE PROVIDED TO CLASS MEMBERS

To protect the due process rights of absent class members, Fed.R.Civ.P. 23(h)(1) requires that a notice of a motion for attorneys' fees must be "directed to class members in a reasonable manner." Typically, this notice is included along with a Rule 23(e) settlement notice. However, there was no settlement in this case, so there has been no settlement notice mailed to the class. Further, although this is not a "common fund" case, see *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988, 995 (9th Cir. Cal. 2010), plaintiffs believe that since their fee award may impact the recovery by other class members, due process requires class notice. Therefore, plaintiffs are requesting that the Court approve the form of notice, and set a deadline for objections and a hearing date.[2]

## III. FACTUAL BACKGROUND

### A. The Plaintiffs

Kristy Schwarm was initially the sole plaintiff in this class action lawsuit. She lives in Ukiah, California and is the mother of six children. In March, 2004 the Schwarm family

---

2. In a separate motion, plaintiffs are moving for approval of a distribution plan for the $160,000 that they have so far been able to obtain. Plaintiffs will be submitting a proposed notice, allowing class members to object to the attorney's fee motion, and/or the distribution plan.

had a checking account with overdraft protection at Redwood Credit Union.[3] In contemporary life, relatively new ways to access checking accounts make it more difficult to keep track of daily balances, than when writing checks was the primary means to withdraw money. For example, Ms. Schwarm and her husband made withdrawals from their checking account through four different methods: by writing checks, by ATM withdrawals, by a PayPal account, and by Visa Check Card withdrawals. Overdraft protection helped the Schwarms overcome the problem of imprecise record-keeping. However, it proved to be a double-edged sword. The Schwarm family racked up a number of bank charges in March 2004, when an ATM withdrawal from the bank drained their account and caused overdraft protection charges of $20.00 per withdrawal to kick in. These fees had a snowball effect on the Schwarm's checking account, causing it to be continually overdrawn in March and April, 2004. Not aware that overdraft protection fees had depleted their checking account, Ms. Schwarm wrote one check each to Walmart and FoodMaxx. After the checks did not clear and Ms. Schwarm could not pay them, the merchants, Walmart and SaveMart, referred her checks directly to District Attorney Technical Support, Ltd. ("DATS"). Defendants then sent Ms. Schwarm a series of letters from the "District Attorney Check Restitution/Prosecution Program." These letters were printed on simulated law enforcement letterhead, from either the Mendocino District Attorney the Mendocino County Sheriff or the Mendocino County Police. Each of defendants' letters threatened Ms. Schwarm with arrest and prosecution if she did not pay the checks and fees and attend a check diversion class. Ms. Schwarm was terrified that she would be arrested, because she thought that Mendocino County law enforcement officers had sent her the letters. Once while driving in Ukiah with her children, she was pulled over by a police officer for a routine traffic stop. She was terrified because she thought she was going to be arrested for the unpaid checks in the letters, and would be handcuffed and taken away in front of her children. She did not find out that DATS' dunning letters were not sent by law enforcement officials until she consulted a bankruptcy attorney in 2005. Patricia Foronda, Josann Ancelet and 36,000 other class

---

3. The facts recited in this memorandum relating to the plaintiffs and to the defendants' business are based on evidence submitted in support of summary judgment.

members were sent the same threatening letters, without anyone investigating for evidence of criminal intent in writing the checks.

**B. Henry Craighead and District Attorney Technical Support, Ltd.**

Henry Craighead described himself as DATS' founder, director, president and CEO. Craighead designed the computer system that DATS used to generate collection letters and track collection activity. In addition to participating in day-to-day decision-making, Craighead exercised hands-on control of DATS.

**C. DATS' Check Collection Operation**

Defendant DATS operated as Computer Support Services (CSS), and contracted with 25 district attorney's offices to provide "Collection Services," which included, inter alia, receiving unpaid checks directly from merchants, conducting mailings, collecting money from check writers, and disbursing payments directly to the merchants that referred the unpaid checks. The contracts with each district attorney were essentially the same. Under each contract, DATS paid the district attorney's office a percentage of the fees it collected. For example, in Alameda County, DATS agreed to pay 35% of diversion and administration fees, with guarantee of an $11,000 monthly minimum against the percentage split.[4] The only material differences between each county's contracts, were the length of the contract period and the percentage paid to the district attorney's office.

Once a district attorney in a particular county authorized DATS to operate a check diversion program, DATS would solicit local merchants to refer checks directly to District Attorney Restitution/Prosecution Program, rather than to other debt collectors. The checks did not first go through the district attorneys' office. Another major referral source for DATS was Certegy. Certegy is a check guarantee company and debt collector that purchases checks from its subscribing merchants after default. Merchants pay Certegy a percentage-based fee on each check, to "guarantee" the check will clear. If a guaranteed check fails to clear, Certegy pays the merchant the check amount, and then attempts to collect the check itself. Although Certegy does

---

4. *See* 2004 Contract with Alameda County, para. 1.11, filed as Exhibit 19 to Plaintiffs' Motion for Partial Summary Judgment, filed April 27, 2007, Docket No. 119-2.

not pretend to be a victim of check crime, one of the ways that Certegy collects checks is by turning the check over to a check diversion company like DATS.

When a merchant or debt collector referred an unpaid check to DATS, DATS entered the check into its computer system. DATS sent a report listing new checks it received to the appropriate district attorney's office weekly. Unless the district attorney or the merchant contacted DATS and requested DATS to stop processing a particular check, DATS' computerized system would begin to generate pre-programmed form letters in a pre-determined sequence at pre-determined intervals. DATS programmed its computer to automatically generate DATS' first dunning letter ten days after DATS entered check data.

In its dunning letters and in its contacts with check writers, DATS disguised itself as the district attorney, using district attorney letterhead on letters designed to convey that the check writer risked arrest and prosecution if he or she did not pay the check and the fees DATS demanded. The letters were intended to have maximum coercive impact. For instance, the second letter in the series, called the "Red Letter," was printed on red paper and titled:

### FINAL NOTICE PRIOR TO REFERRAL
### FOR POSSIBLE ARREST WARRANT

After this lawsuit was filed, the Mendocino County District Attorney reviewed the DATS program and determined that it was false and misleading for DATS to send letters that appeared to come from a law enforcement agency. The Mendocino District Attorney also decided that DATS should not accept checks referred directly by merchants, instead of the district attorney, and that there was no provision in law justifying the $85 diversion fee.[5]

## IV. PROCEDURAL HISTORY

### A. Schwarm v. DATS

Plaintiff Kristy Schwarm filed this class action lawsuit on June 28, 2005, naming Henry Craighead and DATS as defendants. Docket No. 1. Plaintiffs immediately commenced

---

5. *See* August 25, 2005 letter from the Office of the Mendocino County District Attorney to Henry Craighead, filed as Exhibit 25 to Plaintiffs' Motion for Partial Summary Judgment, filed April 27, 2007, Docket No. 119-5.

discovery and over the course of the next year deposed Craighead and five non-party witnesses, subpoenaed records from both merchants and district attorneys that did business with DATS, and obtained records from numerous district attorneys pursuant to the California Public Records Act.[6]

On December 30, 2005, plaintiffs move to certify a class, and on March 7, 2006, the Court granted plaintiffs' motion, certifying the following class:

> All persons who wrote checks in California to whom DATS mailed collection demands concerning dishonored checks, since June 29, 2003, to the date the class is certified.

> The court further certifies the following subclasses: (1) all members of the umbrella class, from whom DATS attempted to collect, or collected money for checks written for personal, family, or household purpose, since June 29, 2004; and (2) all members of the umbrella class from whom [defendants] attempted to collect, or collected money, since June 29, 2003.

*Class Certification Order, Schwarm v. Craighead,* 233 F.R.D. 655, 665 (E.D. Cal. 2006).

Defendants refused to provide a class list, forcing plaintiffs to file a motion to compel production. Magistrate Judge Hollows granted plaintiffs' motion on April 5, 2006. Docket No. 47. Defendants provided the names and addresses of class members, but the class list did not include any check or payment information. On June 7, 2006, plaintiffs mailed the class notice approved by the Court to 36,407 class members who did not opt out. *Declaration of Tiffany Ables re: Mailing of Class Notice and Opt-Outs*, filed October 14, 2006, Docket No. 92.

On June 6, 2006, plaintiffs filed a motion to amend the Complaint to add Patricia Foronda and Josann Ancelet as class representatives. Defendants did not oppose the motion. Instead, on August 7, 2006, DATS filed a Chapter 7 bankruptcy petition, resulting in a stay of the action. August 18, 2006 Minute Order, Docket No. 66. The Court subsequently granted plaintiffs' motion to lift the stay as to Henry Craighead, who had not filed for bankruptcy. Order, filed September 21, 2006, Docket No. 74. The action then proceeded against Craighead only. Plaintiffs re-filed their motion to amend the Complaint to add Foronda and Ancelet as class representatives. Defendant Craighead opposed the motion. While this was taking place,

---

6. The facts concerning the procedural history of this action are set forth in the Declaration of Paul Arons in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs, filed herewith.

Craighead's counsel successfully moved to withdraw as his counsel, leaving Craighead to represent himself. On October 27, 2006, the Court granted plaintiffs' motion to amend the Complaint. Docket No. 97.

Prior to DATS' bankruptcy filing and Craighead's counsel withdrawing, plaintiffs had been working with Craighead's counsel to schedule an inspection of documents and production of class data that would include check and payment information. Defendants stalled for weeks, and then only produced partial class data that did not include the information necessary to identify which class members had paid fees, or to calculate the amount of fees individual class members had paid. Plaintiffs' pursuit of additional documents and information was interrupted by the DATS bankruptcy filing in August 2006, and the withdrawal of defendant Craighead's counsel. After the stay of the action against Craighead was lifted in September 2006, Craighead claimed that following the bankruptcy filing, he had turned over all the DATS computer hardware, including class member data, to the bankruptcy trustee, who had never returned it. The trustee denies having taken possession of the hardware, or having any copies of DATS computer files. It also turned out that Craighead had made all the documentary evidence he had concerning class members unavailable, by sending unsorted boxes of documents back to the district attorneys with which DATS had contracts.

In April 2, 2007 plaintiffs successfully moved to amend the class certification order, by adding Patricia Foronda and Josann Ancelet as class representatives. *Order*, filed May 25, 2007, Docket No. 134. On April 27, 2007, plaintiffs moved for summary judgment on liability. On March 10, 2008, Craighead filed a cross-motion for summary judgment. Docket No. 166. On May 5, 2008, the Court granted plaintiffs' motion for summary judgment and denied Craighead's, *Schwarm v. Craighead*, 552 F. Supp. 2d 1056 (E.D. Cal. 2008), holding defendants' practices unlawful under federal and state law, and making important rulings on issues of first impression, as set forth in Section V.C., below.[7]

---

7. The summary judgment ruling was the first decision interpreting the California Bad Check Diversion Act, Cal. Pen. C. §§ 1001.60, et seq. and, to plaintiffs' knowledge, only the second summary judgment decision addressing FDCPA coverage of "bad check diversion program"

The Court dismissed plaintiffs' due process claims, and did not award any damages, based on the evidence presented at the time. On June 13, 2008, plaintiffs moved for partial summary judgment against Craighead on damages. Docket No. 184. The Court awarded actual damages against Craighead of $ 741,387.05, but declined to enter judgment on all issues. *Schwarm v. Craighead*, 2008 U.S. Dist. LEXIS 70319, *17 (E.D. Cal. Aug. 5, 2008).

The DATS bankruptcy proceeding, discussed below, concluded on October 2010, lifting the automatic stay. 11 U.S.C. § 362(c)(2)(A). On January 22, 2011, plaintiffs moved for summary judgment on liability and damages against DATS, and to enter a final judgment against Craighead and DATS. Docket No. 204. On March 31, 2011, the Court granted the motion and ordered that judgment be entered against Craighead and DATS in the amount of $741,387.05. Docket No. 225.

**B. In Re DATS**

DATS filed its Chapter 7 bankruptcy petition on August 7, 2006. It listed $20,338 in assets, and $107,525 in liabilities, none of which included liability to plaintiffs or the class in this lawsuit.[8] As a direct result of the actions of plaintiffs' counsel in this lawsuit, plaintiffs were able to recover $160,286.78. After DATS filed its bankruptcy petition, plaintiffs' counsel contacted the trustee and told her that he had been informed that shortly before filing bankruptcy, DATS had written over $200,000 in checks to various creditors. The trustee then froze the checking account, ultimately recovering $117,836. Paul Arons also contacted the bankruptcy trustee's counsel, explaining that it was plaintiffs' position that in collecting checks for major national merchants and debt collectors, DATS had collected illegal fees, a portion of which it turned over to its merchant clients. Plaintiffs provided both a detailed legal analysis, and discovery documents supporting its claim, and provided other assistance, including a declaration, in response to merchant objections. Based on this information, the trustee initiated adversary proceedings against Walmart, Costco, Certegy Payment Recovery Systems, Kroger and SaveMart

---

check collection schemes. *See Gradisher v. Check Enforcement Unit, Inc.*, 210 F. Supp. 2d 907, 914 (W.D. Mich. 2002).

8. The DATS Voluntary Petition for Bankruptcy is filed herewith as Exhibit 1.

to recover illegal fees, ultimately settling the actions for a total of $137,000. The money recovered from DATS' bank account and the adversary proceedings constituted 95% of the $268,812 in estate assets.[9] Plaintiffs' counsel filed proofs of claim on behalf of Kristy Schwarm, the class and themselves, for damages and attorneys' fees and costs. After deduction of administrative expenses, $162,638 remained to be distributed to all creditors. The $160,286.78 plaintiffs' counsel received from the trustee constitutes almost 99% of the debtor's estate, after deduction of administrative expenses. Plaintiffs will address the disposition of these funds in a separate Motion for Approval of Distribution Plan.

## V. PLAINTIFFS ARE ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS FOR PREVAILING ON THEIR CLAIMS UNDER THE FDCPA

### A. An Award of Reasonable Attorneys' Fees and Costs Is Mandatory to Prevailing Plaintiffs in FDCPA Cases

Congress enacted the Fair Debt Collection Practices Act upon finding that "there is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," and that existing laws failed adequately to protect consumers. *Id.*, at § 1692(a) and (b). "Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to loss of jobs, and to invasions of individual privacy." *Id.,* at 1692(a). A principal purpose of the FDCPA is to eliminate abusive debt collection. *Id.*, at 1692(e).

Congress intended that private enforcement actions be the primary enforcement tool of the Act. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777, 780-781 (9th Cir. 1982). To this end the Act's fee provision requires the payment of costs and reasonable attorney's fees to a successful consumer:

> . . . any debt collector who fails to comply with any provision of this subchapter . . . is liable to such person in an amount equal to the sum of--[actual damages] [statutory damages] and (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. 15 U.S.C. §1692k(a)(3).

By this provision Congress intended to encourage able counsel to undertake FDCPA cases. *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995), *cert. denied*, 515 U.S. 1160, 115 S. Ct.

---

9. The DATS Trustee Final Accounting and Distribution Report, filed September 12, 2010, is

2613 (1995). Thus "it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases." *Id.* Unlike most private tort litigants, a plaintiff who brings an [FDCPA action] seeks to vindicate important rights that cannot be valued solely in monetary terms. *Id.*, *citing*, *City of Riverside v. Rivera, 477 U.S. 561, 106 S. Ct. 2686, 91 L. Ed. 2d 466,* (1986).

### B. A Fee Award Must Be Calculated by The Lodestar Adjustment Method

In awarding attorneys' fees the court has discretion over the amount to be awarded. *Hensley v. Eckerhart*, 461 U.S. 424, 436-437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). However, since determination of the lodestar figure is fundamental to calculating the amount of the award, the court's exercise of discretion must be based on the lodestar adjustment method. *Hensley v. Eckerhart*, 461 U.S. at 433-437; *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149, n. 4. (9th Cir. 2001); *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987).

The lodestar is calculated by multiplying the number of hours reasonably spent on the litigation times a reasonable hourly rate. *Hensley v. Eckerhart*, *supra*, 461 U.S. 424, 433. In setting the lodestar rate this Court is required to consider the relevant factors set forth in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69 (9th Cir. 1975), *cert. denied sub nom. Perkins v. Screen Extras Guild, Inc.*, 425 U.S. 951 (1976).[10] The court need not discuss specifically each factor so long as the record shows that the court considered the factors called into question by the case at hand. *Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436, 441 (9th Cir. 1983). Adjustments to the lodestar may be made according to the particular circumstances of the case. *Hensley v.*

---

filed herewith as Exhibit 2.

10. The *Kerr* factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the case; (8) the amount in question and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.,* 526 F.2d at 69-70. The relevant *Kerr* factors are addressed, *infra*, in plaintiffs' discussion of their entitlement to a multiplier under California law, since the same factors arise under state and federal law.

*Eckerhart*, 461 U.S. at pp. 435-436. Under federal fee-shifting statutes such adjustments are rare. *See Hensley v. Eckerhart, id; Gates v. Deukmejian,* 977 F.2d 1300, 1310 (9th Cir. 1992).

In determining the reasonably hourly rate, courts look to the prevailing market rates in the relevant community with close attention paid to the fees charged by lawyers of reasonably comparable skill, experience, and reputation. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210-1211 (9th Cir. 1986), reh'g denied, amended on other grounds, 808 F.2d 1373 (9th Cir. 1987); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. Cal. 2008) (*Camacho II*), *citing Barjon v. Dalton,* 132 F.3d 496, 500 (9th Cir. 1997); *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992), *citing Blum v. Stenson,* 465 U.S. 886, 895 (1984). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990).

An adjustment for delay in payment is an appropriate factor in determining what constitutes a reasonable rate under federal fee-shifting statutes. *Missouri v. Jenkins*, 491 U.S. 274, 283-284 (1989). This is because compensation received years after the services are rendered "is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." *Id.,* at 283. The district court has discretion either to adjust to current rates, or to make an interest adjustment to the historical rates. *Gates v. Deukmejian*, 977 F.2d at 1314-1315, *citing Missouri v. Jenkins*. A fee award at current rates is intended to compensate prevailing attorneys for lost income they might have received through missed investment opportunities, as well as lost interest. *Id., at 1315*. A delay in payment of three years is sufficient to compensate prevailing attorneys at current market rates. *Id.*

In determining a reasonable number of hours, the Court must review time records to determine whether the hours claimed by the applicant are adequately documented and whether any of the hours were unnecessary, duplicative or excessive. *Chalmers v. City of Los Angeles,* 796 F.2d at 1210.

**C. Plaintiffs Vindicated Important Consumer Rights Underlying the FDCPA**

This litigation has enforced important rights affecting the public interest. Here plaintiffs vindicated the important public policy of preventing abusive collections and enforcing the federal FDCPA, 15 U.S.C. §1692 et seq. At issue was whether defendants' "bad check diversion" business model violated the law, by using a district attorney's name and authority to falsely threaten consumers with arrest, thereby frightening them into paying unlawful collection fees. In prosecuting this action, plaintiffs established the following law.

- The 2006 amendment to the FDCPA providing a conditional exemption for bad check diversion programs is not retroactive. *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1069 (E.D. Cal. 2008).

- Private entities such as defendant violate the FDCPA, 15 U.S.C. §§ 1692e(3), (9) and (14), by sending collection letters on district attorney letterhead. *Id*. at 1076.

- Defendant check diversion program violates the FDCPA, 15 U.S.C. §§ 1692e(4)and (5), by sending collection letters on district attorney letterhead that include threats of arrest and prosecution, prior to making any determination that the recipient would be prosecuted if he or she did not pay the fees demanded. *Id*. at 1079.

- Cal. Pen. C. § 1001.65 authorized only a $35.00 processing fee, and a maximum $10 merchant bank charge fee. Therefore, check diversion programs violate the FDCPA, 15 U.S.C. §§ 1692e(2) and 1692f(1) by collecting an $85.00 diversion fee and other fees that are not expressly authorized by the Bad Check Diversion Act. *Id*. at 1080.

- Check diversion programs violate the FDCPA, 15 U.S.C. §§ 1692e(11)and 1692g(a) when their collection letters do not include warnings and disclosures mandated by the FDCPA. *Id*. at 1081-82.

Here, the ruling directly impacted the 36,000 consumers to whom defendants sent coercive collection letters threatening their prosecution, as well as a potentially larger group of future victims who benefited when defendants ceased business as a result of this lawsuit.

**D. The Novelty and Difficulty of the Questions Involved**

Privately operated "district attorney bad check diversion programs" began to evolve during the 1980's and dramatically expanded in the late 1990's. Cloaking themselves in the mantle of law enforcement, these companies are check collectors who pay district attorneys a fee for permission to use the district attorney's name and authority. At the time this action was filed there had been relatively little litigation concerning the legality of private check diversion collection operations. Until this Court decided summary judgment, there had been only one other summary judgment ruling on the issue of whether companies that followed this business model in collecting checks violated the FDCPA.[11] Thus, this Court's first summary judgment ruling was important in establishing that private entities like DATS must follow the same rules as other debt collectors. In addition to having a class certified and successfully moving for summary judgment on both liability and damages, plaintiffs were able to recover money from DATS even after it went into bankruptcy. To accomplish this, plaintiffs' counsel actively assisted both the bankruptcy trustee and her counsel in identifying assets, and providing both legal advice and evidence resulting in the recovery of $137,000 from some of DATS' former clients.

//

//

---

11. *Gradisher v. Check Enforcement Unit, Inc.*, 210 F. Supp. 2d at 914.

### E. The Time and Labor Required

Plaintiffs' counsel have so far incurred the following hours litigating this dispute:[12]

| Attorney | Hours |
|---|---|
| Paul Arons | 414.45 |
| O. Randolph Bragg | 47.1 |
| Sharon Grace | 88.5 |
| Craig Shapiro | 12.9 |
| Shannon Carter-paralegal | 5.4 |

### F. The Skills Required to Perform the Legal Services Properly

The successful prosecution of this lawsuit required familiarity with the Fair Debt Collection Practices Act, Rule 23 class action procedures and bankruptcy law. Plaintiffs' counsel's significant expertise and experience in these areas is demonstrated by plaintiffs' success at all major points in this litigation.

### G. Whether the Fee Is Fixed or Contingent

In this case, and in similar cases filed under the FDCPA, individual client recoveries are not large. Therefore, it is not feasible for a client to pay a lawyer an hourly rate to prosecute a case. Plaintiffs' counsel, in this and similar cases are paid only when the plaintiff prevails, and when the judgment is able to be enforced against a solvent defendant.

### H. The Amount Involved and the Results Obtained

Plaintiffs' primary goal in filing this lawsuit was to put a stop to defendants' illegal collection practices, and secondarily, to force repayment of any illegal fees collected.[13] *See*, *Schwarm v. Craighead*, 233 F.R.D. at 663, (". . . the request for injunctive and declaratory relief clearly predominates over the claim damages."). Plaintiffs achieved complete success in stopping defendants' unlawful practices in that defendants chose to cease business operations in the wake of

---

12. Counsel's itemized hours are attached to their respective declarations.

13. *See* Declaration of Paul Arons in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs, para. 16.

class certification. Plaintiffs also were completely successful in obtaining a damages and restitution judgment of more than $750,000 against defendants. Plaintiffs' ability to collect the judgment is more problematic, since defendant DATS is defunct, and defendant Craighead may not have any non-exempt assets. Plaintiffs will continue in their efforts to enforce the judgment against defendant Craighead.

## I. The Undesirability of the Case

FDCPA class actions against debt collectors do not attract as many lawyers as other types of class actions, because debt collectors are not highly capitalized. Therefore the risks of litigation often outweigh the potential financial reward. Even where a plaintiff achieves complete success on the merits, there is a substantial possibility that, as is largely true here, the defendant will become insolvent before it is possible to enforce a judgment for the class, or an award for statutory attorneys' fees. This pattern of calculated insolvency makes it critical to the enforcement of the FDCPA that plaintiffs' attorneys receive fully compensable fee awards where they have prevailed on the merits.[14]

## J. The Experience, Reputation, and Ability of the Attorneys

Plaintiff's counsel are experienced and able, with extensive experience prosecuting FDCPA class actions. O. Randolph Bragg, Paul Arons and Sharon Grace have been responsible for numerous published decisions advancing the rights of consumers to be free from debt collection abuse. O. Randolph Bragg is an author and lecturer on FDCPA issues. Both Mr. Bragg, Mr. Arons and Ms. Grace have represented plaintiffs in multi-million dollar FDCPA class actions.

## K. The Prevailing Market Rate for Similar Work Performed By Attorneys of Comparable Skill, Experience and Reputation

### 1. Previous Awards to Plaintiffs' Counsel in Similar Cases

Prior determinations of counsel's hourly rates in other FDCPA class actions support the hourly rates requested. In *Carrizosa v. Legal Recovery Services*, 2011 WL 1674964

---

14. *See* Declaration of Paul Arons in Support of Plaintiff's Motion for Reasonable Attorneys' Fees and Costs, para. 11, filed herewith.

(N.D.Cal., May 3, 2011) the court found that $480 per hour for Mr. Bragg, and $465 per hour for Mr. Arons were reasonable hourly rates. In *Hunt v. Imperial Merchant Services*, 2010 WL 3958726, 2010 U.S. Dist. LEXIS 111243, *12 (N.D.Cal., Oct. 7, 2010), the court found that $480 per hour for Mr. Bragg, and $465 per hour for Mr. Arons and Ms. Grace were reasonable hourly rates. See also n *Palmer v. Far West Collection Services, Inc.,* 2008 U.S. Dist. LEXIS 105703 (N.D. Cal. Dec. 18, 2008) (Bragg-$465 per hour; Mr. Arons-$425 per hour); *Cancio v. Financial Credit Network, Inc., et al.,* 2005 U.S. Dist. LEXIS 13626, *8 (N.D. Cal. 2005), (Mr. Bragg-$435 per hour); *Campos v. Western Dental Services, Inc. et al,* 2007 WL 2050976 (N.D. Cal.) (Mr. Bragg-$465 per hour). In *Defenbaugh v. JBC* & *Assocs,* 2004 U.S.Dist.LEXIS 16256, *20, *aff'd by unpublished mem.,* No. 04-16866, 2006 U.S.App.LEXIS 19930, *4 (9th Cir. 2006), the court determined that Mr. Bragg's 2004 hourly rate of $435, and Mr. Arons' hourly rate of $400 was reasonable. The Ninth Circuit specifically affirmed that determination.

**2. Declarations of Local Attorneys**

In *Camacho II*, 523 F.3d at 980, the Ninth Circuit recognized that the declarations of knowledgeable local attorneys, though not "dispositive," should be considered. Here, plaintiffs' hourly rates are supported by the declarations of practitioner Andrew J. Ogilvie, and of Richard M. Pearl, the author of California Attorney Fee Awards, 3rd Ed. (Cal. CEB 2010), with expertise in the hourly rates for California attorneys. Mr. Pearl's declaration, based in part on his survey of hourly rates charged by Bay Area attorneys of comparable skill and experience, demonstrates that the hourly rates sought by plaintiffs' counsel is on the low end of the market rate for attorneys of their caliber.[15] In particular, Manatt, Phelps and Philips, and Morrison Foerster, both with Sacramento offices, were charging rates in 2009 that are substantially higher than the rates plaintiffs' counsel are seeking in this action.

---

15. Plaintiffs are submitting the fee declaration that Mr. Pearl prepared in *Hunt v. Imperial Merchant Services*, as Exhibit 3. In his declaration, at paragraph 7, Mr. Pearl specifically addresses the reasonableness of the hourly rates sought by Mr. Bragg, Mr. Arons and Ms. Grace.

### 3. Awards to Other Attorneys of Similar Experience for Comparable Cases

Hourly rate determinations for comparable work in the Sacramento area also show that the rates claimed here are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." In consumer litigation involving automobile sales, attorneys with approximately ten years' experience have consistently been awarded statutory fees at the rate of $390 per hour.[16] In *Yeager v. Bowlin*, 2010 U.S. Dist. LEXIS 63399, *17 (E.D. Cal. June 3, 2010), this Court awarded an intellectual property lawyer with sixteen years' experience, fees at that rate of $400 per hour. In *Beecham v. City of W. Sacramento*, 2009 U.S. Dist. LEXIS 111572 (E.D. Cal. Nov. 16, 2009), which was an excessive police force case, lead counsel, with twelve years' experience, was awarded statutory fees at the rate of $375 per hour. In *Schofield v. Metro. Life Ins. Co.*, 2009 U.S. Dist. LEXIS 36312, 8-9 (E.D. Cal. Apr. 16, 2009), in an ERISA action, the court awarded counsel with 31 years' experience fees at the rate of $450 per hour.[17]

Here, three of plaintiffs' three attorneys have been practicing law for more than thirty years with extensive class action and consumer rights experience. Paul Arons and Sharon Grace have successfully spearheaded class actions attacking abusive check collection practices. Between them, they may have more published decisions in this area than any other lawyer. Randolph Bragg has been litigating FDCPA cases nationally almost as long as there has been an FDCPA, and is one of a handful of attorneys responsible for shaping the body of FDCPA law. Based on the fee awards listed above, the $450 per hour that Mr. Bragg, Mr. Arons and Ms. Grace seek is well within the range of reasonable hourly rates.

---

16. *See* Declaration of Kevin Faulk and attached exhibits, filed herewith.

17. In deciding the hourly rate, the court looked at *McAfee v. Metropolitan Life Ins. Co.*, 625 F. Supp. 2d 956 (E.D. Cal. 2008), in which the court approved an hourly rate of $ 400 for the plaintiff's counsel who had over thirty years of experience in civil litigation, and *Aguilar v. Melkonian Enters., Inc.*, 2007 U.S. Dist. LEXIS 8146, 2007 WL 201180, at *8 (E.D. Cal. Jan. 24, 2007), where the court approved an hourly rate of $ 495 for the plaintiff's lead counsel in an ERISA class action.

### L. Lodestar Calculation

Plaintiffs' counsel are seeking compensation for the following hours at the rates indicated:

| Attorney | Hourly Rate | Total Hours Claimed | Total Compensation |
|---|---|---|---|
| O. Randolph Bragg | $450 | 47.1 | $ 21,195 |
| Paul Arons | $450 | 414.45 | $ 186,502 |
| Sharon Grace | $450 | 88.5 | $ 39,825 |
| Craig Shapiro | $250 | 12.9 | $ 3,225 |
| Shannon Carter-paralegal | $120 | 5.4 | $ 621 |
| **TOTAL** | | | **$ 251,368** |

The total lodestar calculations show that for their work on the merits, plaintiffs are entitled to an award of attorneys' fees in the amount of $ 251,368.

In addition to compensation for work on the merits, an award of fees is appropriate for the time expended in pursuing a Motion for Reasonable Attorneys' Fees and Costs. *Commissioner v. Jean*, 496 U.S. 154, 164, 110 S.Ct. 2316 (1990); *Camacho II*, 523 F.3d at 981; *Webb v. Ada County*, 285 F.3d 829, 835 (9th Cir. 2002); *Jordan v. Multnomah County*, 815 F.2d at 1264. The time claimed by plaintiffs' counsel Paul Arons and Sharon Grace includes 14.3 hours (Mr. Arons-12.2; Ms. Grace 2.1) for work on the fee motion.

## VI.  PLAINTIFF'S ATTORNEYS ARE ENTITLED TO AN AWARD OF COSTS AND LITIGATION EXPENSES

The FDCPA grants the successful plaintiff "the costs of the action." 15 U.S.C. §1692k(a)(3). A prevailing plaintiff is entitled to an award of the same out-of-pocket litigation expenses that are normally billed to a fee-paying client, including costs incurred in travel, courier, telephone, faxing, postage and photocopying computerized research. *Sousa v. Miguel*, 32 F.3d 1370, 1374 (9th Cir. 1994), *Davis v. City of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992), *Ilick v. Miller*, 68 F. Supp. 2d 1169, 1181 (D. Nev. 1999). Plaintiffs request an award of costs and litigation expenses in addition to an award of attorneys' fees. Plaintiff's litigation expenses and

costs to date total $ 55,574.91.[18]  Plaintiffs anticipate incurring an additional $15,000 to $20,000 for printing and mailing absent class members notice of this motion and the motion for approval of a distribution plan.

## VII.  THE CLASS REPRESENTATIVES SHOULD BE AWARDED AN INCENTIVE PAYMENT FOR THEIR PARTICIPATION IN THIS LITIGATION

Without the class representatives' willingness to come forward and represent the class, this action would have been impossible.  Each of the three plaintiffs have spent hours conferring with counsel, providing facts and documents regarding their contacts with defendants, providing declarations, and conferring regarding important development in the lawsuit.[19]  They are not being awarded any statutory damages and have not received any other compensation. Plaintiffs are requesting that they each be awarded $750 for their participation in this successful lawsuit.

To determine the propriety of incentive awards to named plaintiffs, a district court should consider the actions protecting class interests, the benefit provided to the class based on those actions, and the amount of time and effort expended by the plaintiff.  *Staton v. Boeing Co*., 327 F.3d 938, 976-977 (9th Cir. 2003).  Here, unless these three plaintiffs had been willing to come forward to represent the class, defendants would still be threatening consumers and collecting illegal fees.  "In general, courts have found that $ 5,000 incentive payments are reasonable."  *Hopson v. Hanesbrands, Inc.*, 2009 U.S. Dist. LEXIS 33900, 28-29 (N.D. Cal. Apr. 3, 2009), citing, *inter alia*, *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive award of $ 5,000 to two plaintiff representatives); *In re SmithKline Beckman Corp.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990) (approving incentive payments of $ 5,000 for one named representative of each of nine plaintiff classes involving more than 22,000 claimants).  The incentive plaintiffs herein are seeking constitutes approximately one-tenth of one percent of the

---

18.  Litigation expenses already incurred are itemized in the declaration of O. Randolph Bragg.

19.  *See* Declaration of Paul Arons in Support of Plaintiff's Motion for Reasonable Attorneys' Fees and Costs, para. 18, filed herewith

judgment.  If plaintiffs are not awarded an incentive, they will have received nothing at all for their participation in this successful class action.

## VIII.  CONCLUSION

WHEREFORE, plaintiffs request that their motion be granted, and that their attorneys be awarded reasonable attorneys' fees in the amount of $ 251,368 and costs and litigation expenses amounting to $55,574.91 plus the costs of any future class notice ordered by this Court, pursuant to 15 U.S.C. §1692k(a)(3).

Dated:  May 31, 2011                    LAW OFFICES OF PAUL ARONS

                                        By s/Paul Arons_____
                                           Paul Arons
                                           Attorneys for Plaintiffs
                                           KRISTY SCHWARM, PATRICIA FORONDA, and
                                           JOSANN ANCELET