UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| KRISTY SCHWARM, PATRICIA FORONDA, and JOSANN ANCELET, on behalf of herself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HENRY CRAIGHEAD, an individual, DISTRICT ATTORNEY TECHNICAL SERVICES, LTD., a Nevada Corporation, dba COMPUTER SUPPORT SERVICES, aka CHECK RESTITUTION/PROSECUTION PROGRAM, JOHN Q. LAWSON, an individual, MARY A. CHASE, an individual; and DOES 1 through 20, inclusive,<br><br>Defendants.<br>_____/ | NO. CIV. 05-01304 WBS GGH<br><br>ORDER RE: MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVES INCENTIVE AWARD AND MOTION TO APPROVE PLAN OF DISTRIBUTION OF FUNDS |

----oo0oo----

Based on defendants Henry Craighead and District Attorney Technical Services, Ltd.'s ("DATS") collection efforts for checks returned due to insufficient funds, plaintiff Kristy Schwarm initiated this class action on June 29, 2005, alleging

1

claims for (1) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p; (2) violations of the Civil Rights Act, 42 U.S.C. § 1983, based on alleged procedural due process violations; (3) state constitutional procedural due process violations; (4) fraudulent misrepresentation; and (5) negligent misrepresentation.  Currently before the court are plaintiffs' motions for attorneys' fees, costs, and incentive payments and for approval of the planned distribution of funds.

I.   Factual and Procedural Background

On March 4, 2006, this court certified the case as a class action for "[a]ll persons who wrote checks in California to whom DATS mailed collection demands concerning dishonored checks, since June 29, 2003," and up until the date of the court's Class Certification Order.  (Docket No. 42.)  The court named Schwarm as the class representative and subsequently granted plaintiffs' motion to add plaintiffs Patricia Foronda and Josann Ancelet as class representatives.  (Docket No. 134.)  There are approximately 36,000 class members in this action.

After DATS filed Chapter 7 bankruptcy, this action was automatically stayed on August 28, 2006, pursuant to 11 U.S.C. § 362(a).  On September 20, 2006, this court lifted the automatic stay as to Craighead only and, on May 5, 2008, granted plaintiffs' motion for summary judgment with respect to Craighead's violations of subsections 1692e(2)-(5), (9)-(11), (14), 1692f(1), and 1692g(a) of the FDCPA.  Schwarm v. Craighead, 552 F. Supp. 2d 1056, 1069-82 (E.D. Cal. 2008).  In the same Order, the court denied plaintiffs' motion for summary judgment on their claims based on alleged violations of their federal and

2

state procedural due process rights.  Id. at 1082-87.  Three months later, plaintiffs sought summary judgment on the issue of damages, and the court awarded plaintiffs actual damages against Craighead in the amount of $741,387.05.  Schwarm v. Craighead, No. 2:05-1304, 2008 WL 3286797, at *2-3 (E.D. Cal. Aug. 6, 2008).

In DATS' bankruptcy, plaintiffs filed claims in excess of four million dollars and ultimately received $160,282.78 from the bankruptcy estate.  After the bankruptcy court issued a Final Decree indicating that the administration of the estate was complete, the automatic stay as to DATS was lifted.  (Docket No. 213.)  The court then granted plaintiffs' motion for summary judgment with respect to DATS' violations of subsections 1692e(2)-(5), (9)-(11), (14), 1692f(1), and 1692g(a) of the FDCPA and entered final judgment in favor of plaintiffs against Craighead and DATS, holding them jointly and severally liable to plaintiffs in the amount of $741,387.05.  Schwarm v. Craighead, No. 2:05-1304, 2011 WL 1232837 (E.D. Cal. Mar. 31, 2011).  In that same Order, the court approved plaintiffs' decision to abandon their remaining claims.  See id. at *4.

Plaintiffs filed a motion for attorneys' fees, costs, and incentive payments for the class representatives and a motion for approval of the disbursement of the $160,286.78 plaintiffs received from DATS' bankruptcy estate.  (Docket Nos. 233, 246.)  According to plaintiffs, it is unlikely they will be able to recover any additional money from Craighead personally.  (Docket No. 247.)  Papers filed by Craighead in the DATS bankruptcy proceeding in 2008 showed that he held no non-exempt assets.  (Docket No. 198.)  The April 2010 asset discovery that plaintiffs

3

served on Craighead revealed no new assets. (Docket No. 247.) Plaintiffs state that they are serving post-judgment asset discovery as well, but "have no reason to believe that he will disclose any significant assets subject to execution." (Id.)

Plaintiffs filed a motion seeking approval of their proposed method of notifying class members of the pending motions. (Docket No. 241.) After making several adjustments to plaintiffs' proposals, the court ordered that notice be sent to all class members and gave class members until August 25, 2011, to file any objections they might have to plaintiffs' motions for attorneys' fees, costs, and incentive payments and for disbursement. (Docket No. 260.)

Two such objections were timely filed by individual class members. (Docket Nos. 263, 264.) The first objects to the plan but fails to give any of the class member's reasons for objecting. (Docket No. 263.) The second focuses on the class member's objections to defendants' behavior and also does not give any of the member's reasons for objecting to the planned disbursement. (Docket No. 264.) According to plaintiffs, they contacted the second class member, Mr. Thomas Irving, who stated that his objection to the proposed distribution plan was his belief that he should receive some compensation for the harm caused to him by defendants' actions. (Docket No. 267.) Plaintiffs were unable to contact the first objecting class member. (Id.)

Defendant Henry Craighead filed responses to plaintiffs' motions for attorneys' fees and costs and for approval of the disbursement plan. (Docket Nos. 258, 259.) In

4

neither document did Craighead voice objections to the attorneys' fees requested or the planned distribution. Rather, he raised objections to final decisions reached earlier in these proceedings and in related proceedings in the bankruptcy court. These arguments are irrelevant to the motions currently before the court.

II. Discussion

    A.   Award of Attorneys' Fees, Costs, and Incentive Payments

         "At the fee-setting stage when fees are to come out of the settlement fund, the district court has a fiduciary role for the class." Rodriquez v. W. Publ'g Corp., 563 F.3d 948, 968 (9th Cir. 2009). Attorneys "seek fees on their own behalf, which may be contrary to their clients' interests." Fischel v. Equitable Life Assurance Soc'y of the U.S., 307 F.3d 997, 1006 (9th Cir. 2002). For this reason, district courts must "look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial benefit after the lawyers are paid." Fla. ex rel. Butterworth v. Exxon Corp., 109 F.3d 602, 608 (9th Cir. 1997).

         "Class actions commonly produce a common fund from which attorney's fees are drawn, with the residue to be paid to the class." Zucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1326 (9th Cir. 1999). Courts use their equitable powers when determining whether and in what amount to award attorneys' fees out of a class fund. Florida v. Dunne, 915 F.2d 542, 944 (9th Cir. 1990).

         "It is well established that an award of attorneys' fees from a common fund depends on whether the attorneys'

5

1  'services benefited [sic] the fund--whether they tended to
2  create, increase, protect or preserve the fund.'" Class
3  Plaintiffs v. Jaffe & Schlesinger, P.A., 19 F.3d 1306, 1308 (9th
4  Cir. 1994) (quoting Lindy Bros. Builders, Inc. v. Am. Radiator,
5  Etc., 540 F.2d 102, 112 (3d Cir. 1976)).  An attorney should be
6  paid fees out of a common fund if the attorney has "succeed[ed]
7  on any significant issue in the litigation which achieves some
8  sort of benefit the parties sought in bringing the suit."
9  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

10         Heading into the litigation in this case, plaintiffs
11 wanted to recover the money defendants tricked them into paying
12 and stop defendants' illegal collection practices.  In their
13 initial Complaint,  plaintiffs sought both monetary damages and
14 injunctive relief. (Compl. at 18-19.)  Over the course of these
15 proceedings, defendant DATS filed for bankruptcy and ended its
16 check collection business, and plaintiffs have won summary
17 judgment motions declaring defendants' collection practices
18 illegal under the FDCPA and finding defendants jointly and
19 severally liable to plaintiffs in the amount of $741,387.05.

20         Today, because of DATS' bankruptcy, the common fund
21 available to plaintiffs consists of only the $160,286.78 awarded
22 to plaintiffs from DATS' bankruptcy estate.  If plaintiffs'
23 attorneys are successful in their motion to award attorneys' fees
24 and costs, no funds will remain to award to class members.  Class
25 members may never benefit financially from class counsel's
26 efforts, but they do benefit from the attorneys' success in
27 stopping defendants' illegal practices and protecting class
28 members from further harassment.  Class counsel achieved some of

6

the benefit the parties sought in bringing suit and this entitles them to an award of attorneys' fees.  <u>Hensley</u>, 461 U.S. at 433 (citing <u>Sethy v. Alameda Cty. Water Dist.</u>, 602 F.2d 894, 897-98 (9th Cir. 1979) (per curiam)).

When calculating how large an attorney's fee to award in a common fund case, the district court has discretion to use either the lodestar method or the percentage-of-the-fund method.  <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002).  Under the percentage method, the Ninth Circuit has established a twenty-five percent benchmark that can be "adjusted upward or downward to account for any unusual circumstances involved in [the] case."  <u>Fischel</u>, 307 F.3d at 1006 (quoting <u>Paul, Johnson, Alston & Hunt v. Graulty</u>, 886 F.2d 268, 272 (9th Cir. 1989)).  Under the lodestar method, "the court multiplies a reasonable number of hours by a reasonable hourly rate" to arrive at a fee award that is strongly presumed to represent a reasonable fee.  <u>Id.</u> at 1006-07.  If it feels that this amount is not reasonable, the court may adjust the lodestar amount upward or downward, based on considerations such as:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Id.</u> at 1007 (citing <u>Quesada v. Thomason</u>, 850 F.2d 537, 539 n.1 (9th Cir. 1988)).  The court's overall goal is to achieve a

reasonable result.  <u>Butterworth</u>, 109 F.3d at 607.

Plaintiffs' attorneys have requested an award of $248,668 in attorneys' fees.  That figure represents the aggregate of the total number of hours worked by each attorney involved in the case multiplied by what each attorney represents as a fair market rate for his or her work.  They are not requesting that the court apply a multiplier to the base lodestar amount.

Having reviewed the documentation submitted by the requesting attorneys, which includes records of the hours worked, recitals of each attorney's qualifications, and evidence of the market rate for legal work of the kind performed in this case, the court is satisfied that the requested fee award represents reasonable compensation.[1]

Plaintiffs' attorneys additionally request $66,957.55 in litigation expenses.  Under the FDCPA, successful plaintiffs

---

[1] If the court were to use the percentage-of-the-fund method, it would produce an unreasonable result.  Plaintiffs' attorneys would be awarded barely over $25,000 (twenty-five percent of the common fund, once litigation costs are subtracted) for over six years and five hundred hours of work, which led to a successful outcome for their clients and protected important consumer rights.  <u>See</u> <u>In re Omnivision Tech., Inc.</u>, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008) (describing factors including the contingent nature of the fee, benefits achieved, and length of the litigation as reasons that a twenty-five percent award might be unreasonably low).  Such an outcome would frustrate the policies behind the FDCPA, which was intended to encourage attorneys to pursue FDCPA claims despite potentially low recoveries.  <u>See</u> 15 U.S.C. § 1692k(a)(3) (providing that successful plaintiffs are entitled to a reasonable attorney's fee); <u>Tolentino v. Friedman</u>, 46 F.3d 645, 651-52 (7th Cir. 1995) (explaining that the FDCPA makes attorneys' fees mandatory in part to encourage parties to bring FDCPA claims that often "vindicate important . . . rights that cannot be valued solely in monetary terms" (quoting <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 562 (1986))).

8

are entitled to "the costs of the action." 15 U.S.C. § 1692k(a)(3). As discussed above, plaintiffs were successful in this action even though DATS' bankruptcy ultimately reduced the damages plaintiffs were able to collect. Having reviewed plaintiffs' attorneys' submissions, the court is satisfied that they have incurred and should reimbursed for $66,957.55 in costs.

Finally, plaintiffs move for seven hundred and fifty dollars to be paid to each named plaintiff as an incentive payment. Although special rewards for counsel's individual clients are not permissible in a class action, a court may approve incentive awards for named plaintiffs after taking into consideration factors such as the actions taken by the named plaintiffs to protect the class interests and the degree to which the class has benefitted from those actions. Staton v. Boeing Co., 327 F.3d 938, 976-77 (9th Cir. 2003). Additionally, incentive fees may be awarded "to recognize . . . willingness to act as a private attorney general." Rodriguez, 563 F.3d at 958-59.

In this case, as discussed above, DATS' bankruptcy has had the unfortunate effect of severely limiting plaintiffs' ability to recover the money to which the court held them entitled. The attorneys' fees and litigation costs currently sought are greater than the amount available in the common fund. However, the named plaintiffs initiated a suit that stopped defendants from continuing their illegal and harassing collection practices, something all class members benefitted from. The named plaintiffs acted as private attorneys general in bringing suit to force defendants to comply with the FDCPA. They

1 participated personally in the suit by filing multiple
2 declarations in support of their claims, (e.g., Docket Nos. 19,
3 114, 115, 122), and had plaintiffs not initiated suit, it is
4 possible that defendants would still be in business, carrying on
5 their illegal practices.  It is appropriate therefore to award
6 each named plaintiff seven hundred and fifty dollars in incentive
7 fees.

8     Additionally, the court notes that while awarding the
9 named plaintiffs incentive fees will give them a disproportionate
10 share of the common fund, it will "at least allow[] damages for
11 some members of the class where damages might otherwise be
12 unobtainable for any member of the class." In re Mego Fin. Corp.
13 Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000) (approving a
14 settlement agreement under which only certain class members
15 received payments).

16     B.   Distribution Plan

17     Plaintiffs have proposed a distribution plan under
18 which the $160,286.78 awarded the class from defendant DATS'
19 bankruptcy estate would be applied first to litigation costs,
20 next to incentive payments, then to attorneys' fees, and finally,
21 if there is any money remaining, to the National Consumer Law
22 Center as a cy pres recipient.[2]  Under such a plan, there would be
23 no money disbursed to any class member, other than to the named
24 plaintiffs.

25     Usually, a successful class action that results in the

---

[2] Given that plaintiffs' attorneys seek over $200,000 in attorneys' fees alone, it is very unlikely that any money would remain to be paid to the National Consumer Law Center.

creation of a common fund would also end with damages paid to class members.  In this case, however, the class fund will be depleted once litigation costs, attorneys' fees, and incentive fees are paid.  Even if the court refunded only the litigation costs, the relatively large number of class members and small common fund would mean that, taking mailing costs into account, the court could award each class member at most $1.50 and perhaps nothing at all.  (See Pl.'s Mot. In Supp. Of Mot. To Approve Plan of Distribution of Funds 7-8.)

In Cummings v. Connell, 402 F.3d 936 (9th Cir. 2005), the Ninth Circuit overturned this court's decision to award nominal damages to only named plaintiffs, requiring instead that each class member receive damages in the amount of one dollar. In that case, plaintiffs brought a § 1983 claim and were awarded one dollar in nominal damages.  Emphasizing the symbolic importance of nominal damages and the need to treat all class members alike, the Ninth Circuit insisted that each class member, rather than only the named plaintiffs, be mailed a check for one dollar.  Cummings, 402 F.3d at 942-45.

There are several factual distinctions that convince the court that the analysis in Cummings does not apply here. First, this case does not involve nominal damages designed to "vindicate rights, the infringement of which has not caused actual, provable injury" and to "clarify the prevailing party." Id. at 942-42.  Therefore, it is not as symbolically important that each class member be paid a "token" dollar in damages.  Id. at 843.  Second, Cummings did not involve a limited fund and it was possible to pay each class member their full damages.  Here,

11

it is not.  Finally, the court in Cummings emphasized that the purpose of the class action was to aggregate and resolve similar claims in an efficient manner, meaning that it was inappropriate to award damages to some, but not all, class members.  Id. at 944.  The proposed plan of disbursement here would treat all class members the same in that none of them would be awarded any damages.

The court has found one case in which all of a class action common fund was awarded to class attorneys, leaving nothing for individual class members.  See In re Tableware Antitrust Litig., No. C-04-3514, 2007 WL 4219394 (N.D. Cal. Nov. 28, 2007) ("In re Tableware").  In that case, plaintiffs had settled with one defendant for $500,000 and then lost at trial to a co-defendant after accumulating over one million dollars in litigation costs.  The court there held that the analysis should proceed in two steps.  First, it asked whether the litigation costs sought were reasonable and, second, whether a fully informed class representative engaged in negotiations with class counsel would have agreed at the outset of litigation to reimburse litigation costs up to the full amount of the settlement.  Id. at *4, *6.  In that case, the court answered both questions in the affirmative.

In this case, there is perhaps more reason to think that a fully informed class representative would have negotiated a plan similar to the disbursement plan proposed.  Class counsel here obtained declaratory relief when the court ruled defendants' practices illegal.  That victory confers a clearer benefit on class members than the possibility of recovery the court in In re

12

1 Tableware relied on.  Id. at *7.

2          Given that the proposed disbursement plan will leave no
3 funds available to be paid out to individual class members,
4 special attention should be paid to their objections, if any.  It
5 is for that reason that this court took its obligation to review
6 and approve the proposed class notice very seriously.  (See
7 Docket No. 260.)  Only two class members of the over 36,000
8 notified took advantage of their right to file objections with
9 the court, suggesting that the vast majority of class members
10 approve of the terms of the settlement.  Cf. In re Omnivision
11 Tech., Inc., 559 F. Supp. 2d at 1043 ("It is established that the
12 absence of a large number of objections to a proposed class
13 action settlement raises a strong presumption that the terms of a
14 proposed class settlement action are favorable to the class
15 members.") (citing Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,
16 221 F.R.D. 523, 528-29 (C.D. Cal. 2004)).  Neither objection
17 filed provided the court with a compelling reason to reject the
18 proposed distribution plan.

19          Although the court agrees with Mr. Irving, one of the
20 objecting class members, that he suffered damages as a result of
21 defendants' actions and that under ordinary circumstances he
22 should be compensated for his damages, defendant DATS' bankruptcy
23 has made it impossible for each class member to be adequately
24 compensated for the monetary harm they suffered.  Plaintiffs'
25 attorneys conducted the litigation responsibly and, even after
26 receiving the bulk of the common fund, will still be suffering a
27 financial loss.  In re Tableware, 2007 WL 4219394, at *7-8.  In
28 such a situation, the court is satisfied that the proposed plan

of distribution represents "what it believes would have been obtained in a negotiation between a fully informed and interested class representative and class counsel." Id. at *6.

    IT IS THEREFORE ORDERED that plaintiffs' motions for attorney fees and to approve the plan of distribution of funds be, and the same hereby are, GRANTED.

DATED: September 26, 2011

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE